*EXHIBIT*
*B*

STATE OF NEW YORK
SUPREME COURT :: COUNTY OF NIAGARA

---

| | |
|---|---|
| **CALAMAR ENTERPRISES, INC.**<br>3949 Forest Parkway, Suite 100<br>Wheatfield, New York 14120, | **SUMMONS**<br><br>Index No.: |
| Plaintiffs | |
| vs. | |
| **BLUE FOREST LAND GROUP, LLC**<br>5861 South National Drive<br>Parkville, Missouri 64152 | |
| **TIMOTHY LOCHER**<br>5861 South National Drive<br>Parkville, Missouri 64152, | |
| Defendants. | |

---

**TO THE ABOVE NAMED DEFENDANTS:**

　　**YOU ARE HEREBY SUMMONED** to appear and answer the Complaint attached hereto in this action, by serving a copy of your answer on the Plaintiffs' attorney within twenty (20) days after the service of this Summons and Complaint, exclusive of the day of service, (or within thirty (30) days after the service is complete if this Summons and Complaint is not personally delivered to you within the County of Niagara and State of New York; and in case of your failure to appear and answer, judgment will be taken against you by default for the relief demanded in the Complaint.

　　Niagara County is designated as the place of trial.　The basis of venue is Plaintiff's place of business.

{4246872: }

Dated: Buffalo, New York
      July 21, 2016

                WOODS OVIATT GILMAN LLP

           By:      s/ William F. Savino
                    William F. Savino
                *Attorneys for Plaintiff*
                1900 Main Place Tower
                Buffalo, New York 14202
                Telephone:  (716) 248-3213
                Facsimile:  (716) 248-3313
                wsavino@woodsoviatt.com

{4246872: }

STATE OF NEW YORK
SUPREME COURT : COUNTY OF NIAGARA

---

**CALAMAR ENTERPRISES, INC.,**

Index No.: _____

Plaintiffs,

vs.

**BLUE FOREST LAND GROUP, LLC** and
**TIMOTHY LOCHER,**

Defendants.

---

<u>**VERIFIED COMPLAINT**</u>

Plaintiff, Calamar Enterprises, Inc., by counsel, for its Verified Complaint against

Defendants, Blue Forest Land Group, LLC and Timothy Locher, states:

<u>**INTRODUCTION**</u>

1.     This dispute arises out of a series of transactions between Calamar Enterprises, Inc.

("Calamar"), a commercial real estate developer, and Defendants Timothy Locher and Blue Forest

Land Group, LLC ("Blue Forest"), real estate development consultants, pertaining to services

provided by Defendants to Calamar.

2.     Starting in 2012, Calamar retained Defendants to perform site selection services for

it whereby Defendants would identify, evaluate and assist in the acquisition of commercial real estate

sites that met certain viability parameters.

3.     Of the last seven engagements between Calamar and Blue Forest, six have resulted in

circumstances where, upon performing due diligence, the commercial sites have been found to be

not viable despite Defendants' representations and assurances to Calamar that the commercial sites

met its specified parameters.

{4232926:4 }

4.     Despite these wrongful actions and/or failures to act, Blue Forest has made demand upon Calamar for payment in the total amount of $248,505.23, including for work performed on the six commercial sites that have already been found objectively to fall below Calamar's viability parameters.

5.     Calamar denies that any payment is owed Defendants due to Defendants' fraudulent inducement of Calamar to enter into the Consulting Services Agreements, Defendants' omission of material facts prior to entry into said contracts and improper performances and/or failures of performance, such as failures to exercise care and diligence.

## THE PARTIES

6.     Calamar is a commercial real estate developer with its principal place of business located at 3949 Forest Parkway, Suite 100, Wheatfield, NY 14120 in the County of Niagara.

7.     Upon information and belief, Blue Forest Land Group, LLC ("Blue Forest") is a Missouri limited liability company and provider of real estate consulting services located at 5861 South National Drive, Parkville, MO 64152.

8.     Upon information and belief, defendant Timothy Locher is the managing principal of Blue Forest and principally resides in Kansas City, Missouri.

## JURISDICTION AND VENUE

7.     The Court has jurisdiction over this matter in controversy pursuant to Article 3 of the CPLR.

8.     Pursuant to Article 5 of the CPLR, venue over this action is proper in the County of Niagara, State of New York.

## BACKGROUND

9.     Calamar is engaged in the business of commercial real estate development in New York State, Ontario, Canada and several other states.

{4232926:4 }2

10.     Commencing in 2012, Calamar sought development sites for planned facilities in several states in the Midwestern United States, including Kansas, Missouri, Iowa and Nebraska.

11.     The planned facilities were market rate independent living facilities specifically designed for, and marketed to, a specific demographic segment of middle class individuals.

12.     As a result of the specific type of projects that were planned, Calamar had detailed viability parameters for any commercial site that were indispensable to the success and sustainability of the projects.

13.     To facilitate the search and evaluation of the development sites, Calamar elected to retain a consultant with local and regional development expertise to assist it in identifying, evaluating and acquiring development sites that would meet the specific viability parameters (the "Site Selection Services").

14.     Defendants represented to Calamar and held himself themselves as having substantial knowledge, experience and expertise in commercial real estate planning, construction and development to provide the Site Selection Services in the desired locations.

15.     Calamar initially hired Defendant Locher on a case-by-case basis to serve as a consultant to provide Site Selection Services in 2012.

16.     Calamar and/or GAR Associates, LLC ("GAR"), a separate consultant of Calamar, supplied Defendants Locher and Blue Forest with all necessary information pertaining to Calamar's viability parameters, as well as any other such information that was material to Defendants' providing the Site Selection Services.

17.     In total, Defendants have together contracted with Calamar to provide Site Selection Services on nine projects over four years.

18.     Over the course of four years, Defendants engaged in continuous and purposeful interaction via email and telephone with GAR, located in Erie County, New York, and the decision

{4232926:4 }3

makers at Calamar, located in Niagara County, New York, to further the relationships and generate business opportunities for themselves.

19.     On the last seven engagements, Defendants, knowing Calamar's viability parameters, communicated specific commercial sites within desirable target areas and represented them to be conforming to said viability parameters.

20.     Defendants made said representations to generate Calamar's interest in target areas and to induce Calamar into entering into Consulting Services Agreements with Defendants for pecuniary benefit.

21.     Calamar, relying solely and exclusively on the representations and assurances of Defendants as to the viability of the recommended commercial sites, entered into seven Consulting Services Agreements for Site Selection Services with Blue Forest pertaining to Waukee, Iowa, Altoona, Iowa, West Wichita, Kansas, Andover, Kansas, Lees Summit, Missouri, Kansas City, Kansas and Shawnee, Kansas.

22.     For each of the aforesaid Consulting Services Agreements, again relying solely and exclusively on the representations and assurances of Defendants as to the viability of the recommended commercial sites, Calamar issued a "Notice to Proceed" which obligated Blue Forest to perform additional diligence aimed towards effecting an acquisition.

23.     Under each Consulting Services Agreement, the issuance of the "Notice to Proceed" triggers a milestone payment of $22,500 plus $2,000 in expense reimbursements for Blue Forest.

24.     In performing diligence following issuance of the Notices to Proceed, it was discovered that six of the seven development sites objectively fell below the viability parameters known by Defendants: Waukee, Iowa, Altoona, Iowa, West Wichita, Kansas, Andover, Kansas, Lees Summit, Missouri and Shawnee, Kansas.

{4232926:4 }4

25. Calamar duly notified Defendants that said six development sites fell below its viability parameters.

26. The seventh and final commercial site – located in Kansas City, Kansas – is still undergoing diligence and will likely fall below Calamar's viability parameters.

27. Defendants knew or should have known that the commercial sites that served as an inducement to entry into the Consulting Services Agreements, and issuance of the Notices to Proceed thereunder, did not meet Calamar's viability parameters.

28. Upon information and belief, Defendants purposefully failed to provide adequate – much less full and complete – information and/or concealed information pertaining to the commercial sites in order to secure the Consulting Services Agreements and milestone payments due thereunder.

29. Despite these wrongful actions and failures to act, Defendants have made unjustified written demand upon Calamar for payment under all seven Consulting Services Agreements in the total amount of $248,505.23, including the six commercial sites that have already been found objectively to fall below Calamar's viability parameters.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment Pursuant to CPLR § 3001)

30. Calamar repeats and re-alleges the allegations previously set forth above.

31. Calamar and Blue Forest entered into a series of Consulting Services Agreements wherein Calamar sought, *inter alia*, Site Selection Services from Blue Forest to assist Calamar in identifying, evaluating and acquiring real property sites that met Calamar's viability parameters.

32. Blue Forest has made unjustified written demand for payment upon Calamar under the seven Consulting Services Agreements in the total aggregate amount of $248,505.23.

33. Calamar refutes that any payment is due and owing to Blue Forest under the Consulting Services Agreements due to, *inter alia*, Defendants' fraudulent inducement of Calamar to

{4232926:4 }5

enter into the Consulting Services Agreements, Defendants' omission of material facts prior to entry into the Consulting Services Agreements, improper and/or failure of performance, failure to exercise care and diligence in the performance of the contracts and/or breach of the contracts by Blue Forest.

34.    As a result, a justiciable controversy exists as to the rights and other legal relations between Calamar and Defendants under the Consulting Services Agreements, namely whether Defendants are entitled to payment as demanded.

35.    Declaratory judgment is warranted because it will have an immediate practical effect on the conduct of the parties in determining the rights and obligations of payment.

## SECOND CAUSE OF ACTION
**(Fraudulent Inducement)**

36.    Calamar repeats and re-alleges the allegations previously set forth above.

37.    Defendants knew Calamar's parameters for viability in pursuing commercial sites for planned projects.

38.    Defendants, to obtain milestone payments, represented to Calamar that certain commercial sites met specific viability parameters for the planned projects and/or concealed material adverse information pertaining to the lack of viability of the commercial sites.

39.    Defendants knew the representations to be false and/or made the representations with a reckless indifference to error and a pretense of exact personal knowledge.

40.    Justifiably relying upon Defendants' representations and/or omissions regarding the viability of the commercial sites, Calamar entered into the seven Consulting Services Agreements with Defendants to pursue acquisitions of the commercial sites, thereby triggering Defendants' claims for milestone payments

41.     Upon performing due diligence, Defendants' representations pertaining to the viability of the commercial sites were found to be false because at least six of the seven commercial sites were objectively non-viable.

42.     The unviability of the commercial sites was susceptible of accurate knowledge had proper investigation and diligence been performed.

43.     As a direct and proximate result, Calamar has suffered damages in incurring undue delays in identifying viable commercial sites and substantial costs, such as the amounts paid to GAR, in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### (Breach of Contract)

44.     Calamar repeats and re-alleges the allegations previously set forth above.

45.     Calamar entered into a valid contract with Blue Forest in the form of a Consulting Services Agreement dated February 1, 2015 pertaining to the target area of Waukee, Iowa. A true and correct copy of this Consulting Services Agreement is attached herewith and made a part hereof as **Exhibit A.**

46.     Calamar entered into a valid contract with Blue Forest in the form of a Consulting Services Agreement dated June 15, 2015 pertaining to the target area of Kansas City, Kansas. A true and correct copy of this Consulting Services Agreement is attached herewith and made a part hereof as **Exhibit B.**

47.     Calamar entered into a valid contract with Blue Forest in the form of a Consulting Services Agreement dated September 17, 2015 pertaining to the target area of Lees Summit, Missouri. A true and correct copy of this Consulting Services Agreement is attached herewith and made a part hereof as **Exhibit C.**

48.     Calamar entered into a valid contract with Blue Forest in the form of a Consulting Services Agreement dated December 3, 2015 pertaining to the target area of Altoona, Iowa. A true

{4232926:4 }7

and correct copy of this Consulting Services Agreement is attached herewith and made a part hereof as Exhibit **D**.

49.    Calamar entered into a valid contract with Blue Forest in the form of a Consulting Services Agreement dated December 3, 2015 pertaining to the target area of Western Wichita, Kansas. A true and correct copy of this Consulting Services Agreement is attached herewith and made a part hereof as Exhibit **E**.

50.    Calamar entered into a valid contract with Blue Forest in the form of a Consulting Services Agreement dated March 9, 2016 pertaining to the target area of South Kansas City, Missouri. A true and correct copy of this Consulting Services Agreement is attached herewith and made a part hereof as Exhibit **F**.

51.    Calamar entered into a valid contract with Blue Forest in the form of a Consulting Services Agreement dated April 5, 2016 pertaining to the target area of Shawnee, Kansas. A true and correct copy of this Consulting Services Agreement is attached herewith and made a part hereof as Exhibit **G**.

52.    Each Consulting Services Agreements required Blue Forest to provide, *inter alia*, Site Selection Services to Calamar to assist in identifying, evaluating and acquiring real properties for certain planned facilities that met Calamar's viability criteria.

53.    Blue Forest breached the Consulting Services Agreements by, *inter alia*, improperly performing the Site Selection Services and/or failure to exercise care and diligence in the performance of the Site Selection Services.

54.    Due to Blue Forest's breach, six of the seven proposed sites fell below Calamar's viability criteria and the seventh and final site may also fall below said criteria.

55.    As a direct and proximate result, Calamar has suffered damages in an amount to be proven at trial.

WHEREFORE, the Calamar Enterprises, Inc. respectfully requests that this Court enter judgment:

1.      Declaring that Defendants have no entitlement to payment as demanded;

2.      Ordering the rescission of each Consulting Services Agreement for fraud and restitution and punitive damages from Defendants in an amount to be proven at trial;

3.      In the alternative of rescission and restitution, awarding damages to Calamar for Blue Forests's breach of the Consulting Services Agreements in an amount to be proven at trial; and

4.      Granting such other and further relief as this Court deems just and proper.

Dated: Buffalo, New York
       July 21, 2016

                                        WOODS OVIATT GILMAN LLP

                              By:       /s/ William F. Savino
                                        William F. Savino
                                        Robert C. Carbone
                                        *Attorneys for Plaintiffs,*
                                        *Calamar Enterprises, Inc.*
                                        1900 Main Place Tower, 350 Main Street
                                        Buffalo, New York 14202
                                        Telephone:  (716) 248-3213
                                        Facsimile:   (716) 248-3313
                                        wsavino@woodsoviatt.com

{4232926:4 }9

## VERIFICATION

STATE OF NEW YORK          )
                          ) ss:
COUNTY OF ERIE            )

WILLIAM F. SAVINO, being duly sworn, deposes and states that deponent is the attorney for Calamar Enterprises, Inc., the corporation described in the within action; that deponent's office is not located in the same county as Calamar Enterprises, Inc.; that deponent has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to deponent's own knowledge, except for those matters therein stated to be alleged upon information, and as to those matters deponent believes them to be true.

Sworn to before me this 21st
day of July, 2016.

_____
Notary Public

LEA A. HERALD
Notary Public, State of New York
Qualified in Erie County
My Commission Expires March 26, 20_19

# SUMMONS AND COMPLAINT

# EXHIBIT  A

Waukee, IA

## CONSULTING SERVICES AGREEMENT

THIS CONSULTING SERVICES AGREEMENT (the "*Agreement*") is made as of February 1st, 2015 (the "*Effective Date*") by and between:

**CALAMAR ENTERPRISES, INC.**, a New York corporation ("*Company*"); and

**BLUE FOREST LAND GROUP, LLC**, a Missouri limited liability company ("*Consultant*").

Company and Consultant agree as follows:

1. **Definitions.** In addition to words and phrases defined elsewhere throughout this Agreement, the following terms shall have the following meanings:

   a. "*Acquisition Contract*" means a definitive purchase contract or ground lease entered into by the Company (or an affiliate of the Company) for a Desired Facility within a Target Area identified in a Notice to Proceed.

   b. "*Cause*" means either (i) Criminal Cause; or (ii) Civil Cause.

   c. "*Civil Cause*" means Consultant's breach of the terms of this Agreement, which continues uncured for thirty (30) days after written notice specifying the nature of such alleged Civil Cause.

   d. "*Criminal Cause*" means that Company had a good faith basis to allege that Consultant has committed fraud, misappropriation of funds, or another felony.

   e. "*Desired Facility*" means any potential development for which Company has issued to Consultant a Notice to Proceed.

   f. "*Local Governmental Approvals*" means all land use and zoning approvals necessary for the construction or operation of the Desired Facility from the local governmental having jurisdiction over the selected location for the Desired Facility.

   g. "*Notice to Proceed*" means written notice sent from Company to Consultant that requests Consultant to commence Services within a Target Area identified therein and identifies other relevant criteria determined by Company for consideration in the performance of the Services (i.e. type of facility, range of square footage, maximum acquisition price, etc.).

   h. "*Report*" means an analysis of potential sites for the Desired Facility within the Target Area and preparation of a ranking of such potential sites, along with recommendations in the discretion of Consultant for altering boundary lines of the Target Area to encompass other potential sites for analysis.

   i. "*Services*" means the consulting services described in **Exhibit A** attached hereto and incorporated herein by reference.

   j. "*Target Area*" means a designated geographic area described either textually (i.e. "within x miles of I-35 and 119th Street, Johnson County, Kansas") or on a map with a delineated search area).

2.  <u>Services.</u>  Company hereby engages Consultant as an independent contractor to provide the Services, and Consultant hereby undertakes to provide the Services.  Consultant shall hold the discretion as to the time, place, and manner of performance of the Services; provided however, the manner thereof shall be commercially appropriate in relation to the goals and objectives of the Company.

3.  <u>Term.</u>  The initial term of this Agreement shall commence on the Effective Date and expire on the last day of the eighteenth (18th) full calendar month following the Effective Date (the "**_Term_**").  The Term shall automatically renew for successive one (1) year periods unless and until this Agreement is terminated in accordance with Section 10.

4.  <u>Compensation and Expenses.</u>  As compensation to Consultant for providing the Services, Company shall compensate Consultant as follows:

    (a)  <u>Base Fee.</u>  Company shall pay to Consultant a base fee in the sum of $75,000.00 for each Desired Facility (a "**_Base Fee_**").  Each Base Fee shall be due and payable, without demand or offset, as follows:

        (i)  $22,500.00 with the delivery of a Notice to Proceed.

        (ii)  $26,250.00 within fifteen (15) calendar days after full execution of an Acquisition Contract.

        (iii)  $26,250.00 contemporaneously with the closing of an Acquisition Contract.

        (iv)  If Company abandons pursuit of a Desired Facility before execution of an Acquisition Contract, no further portion of the Base Fee shall be due and Consultant shall not be obligated to provide any further Services with respect to such Desired Facility unless and until a new Notice to Proceed and new Base Fee are provided for such Desired Facility; except however, if the new Notice to Proceed specifies Company's election to proceed with a particular location that was identified and analyzed in the initial Report for the applicable Target Area, then prior balance of the Base Fee shall apply and be due and payable in accordance with this Section 4(a).

        (v)  Company and Consultant may, by mutual written agreement entered into prior to the delivery of a Notice to Proceed, establish a different Base Fee and schedule for installment payment thereof with respect to a particular potential Desired Facility, in which event, the provisions of this Agreement (other than subsections 4(a)(i) through 4(a)(iii)) shall nevertheless apply.

    (b)  <u>Reimbursable Expenses and Hourly Fees for Special Services.</u>  Company shall reimburse Consultant for expenses, disbursements and costs incurred by Consultant in the course of providing the Services to Company, including without limitation cost of travel (not including gas and mileage in the greater Kansas City area), meals, lodging and similar expenses outside of the greater Kansas City area (collectively, "**_Reimbursable Expenses_**").  Consultant must obtain pre-approval from Company for any Reimbursable Expenses that exceed $500.  All invoices for Reimbursable Expenses must be accompanied by receipts and a signed expense report from Consultant.  Reimbursable Expenses shall not include the costs of Consultant's general office space equipment and facilities.  In addition to the Base Fees and Reimbursable Expenses, Company shall pay Consultant an hourly fee of $175.00 per hour, chargeable in quarter-hour increments, for time expended by Consultant on activities beyond the scope of

the Services ("**Special Services**"), provided that (i) such Special Services are requested by senior management (vice-president or higher) of Company, and (ii) Consultant notifies Company prior to undertaking such Special Services that Consultant deems such activities to be Special Services under this Agreement. An invoice for Reimbursable Expenses and Special Services shall be due and payable to Consultant within thirty (30) days following Company's receipt of such invoice.

(c)     **Extraordinary Services.** The parties agree to negotiate in good faith an increase in a Base Fee for a Desired Facility in the event the parties experience controversial or extraordinary circumstances beyond the standardized process for obtaining Local Governmental Approvals. Any increase in a Base Fee for a Desired Facility shall be documented in a writing signed by both parties.

(d)     **Payment.** All payments owed to Consultant shall be sent to Consultant at its address for notices, or by wire transfer in accordance with wire instructions provided by Consultant.

5.     **Legal Assistance.** Company and Consultant acknowledge that Husch Blackwell LLP ("*Husch*") may be representing Company (and/or its affiliates) as part of the project team for any Desired Facility. Consultant, however, may utilize the services of Husch, as Consultant deems reasonably appropriate, either on behalf of Company (and/or its affiliates) or Consultant, to assist in the pursuit of Local Governmental Approvals; and Consultant shall be responsible for timely paying all fees charged by Husch for the pursuit of such Local Governmental Approvals. In the course of performing Consultant's Services, Consultant may request that Husch provide other services beyond the pursuit of the Local Governmental Approvals (either on behalf of Company (and/or its affiliates) or Consultant, or both), in which event the Company and Consultant will determine at that time which party will be responsible for Husch's fees for such additional scope of services.

6.     **Relationship of the Parties.** This Agreement creates contractual rights only; and Consultant, for all purposes, shall be considered an independent contractor with respect to Company. Consultant acknowledges that no employment relationship exists between Consultant and Company or either party's affiliates, and Consultant shall not be entitled to any salary, insurance coverage, workers compensation coverage, or other benefits from Company. No party shall be considered a partner, agent or legal representative of the other party for any purpose, and Consultant shall have no power or authority, and at no time shall represent or convey the impression that Consultant has any power or authority, to legally bind or commit Company for any purpose. The parties further acknowledge that Consultant is neither expected nor required to devote continuously throughout the Term all of Consultant's time and efforts in providing the Services, and the amount of hours expended by Consultant in performing the Services may vary from week to week and month to month, but at all times Consultant shall devote such time and attention to providing the Services as is reasonably necessary at such time. Subject to Section 12 below, Consultant may enter into agreements with other entities or individuals to perform services on behalf of said other entities or individuals during the Term of this Agreement.

7.     **Conduct.** Consultant undertakes and agrees to (i) comply with all laws, rules, ordinances and regulations of all applicable federal, state and local authorities in providing the Services, (ii) obtain and maintain, at Consultant's cost, all necessary permits and licenses required to provide the Services, and (iii) in recognition of the ethical and moral principles of Company and its affiliates, provide the Services in manner that would not reasonably be viewed as damaging to the reputation of, or inconsistent with the ethical and moral principles of, Company or its affiliates.

8. **Taxes.** Consultant shall be responsible for all federal, state and local taxes for all compensation paid hereunder, including without limitation all social security and employment taxes, and Company (unless required by applicable tax authorities) will not withhold taxes or be liable for taxes related to such compensation.

9. **Confidentiality.** Consultant covenants and agrees to treat confidentially and not disclose, and not use or exploit for any purpose other than as specified in this Agreement, any information (whether written or oral) which is known to Consultant to be confidential or proprietary information of Company ("**Confidential Information**"). The term Confidential Information as used herein shall be deemed to include, without limitation, technical information, data, know-how, customer lists, catalogs and price lists, computer records, policies, trade secrets, business strategy, financial data, research, development, processes and techniques, and all other confidential and proprietary information of whatever description that may be divulged to Consultant. Consultant recognizes and acknowledges that (i) the Confidential Information is the property of Company and (ii) damage and irreparable harm could result to Company if such information were used or disclosed (except as authorized expressly in writing by Company), and therefore Consultant consents to injunctive relief and other equitable remedies to prevent such unauthorized use or disclosure.

10. **Termination.**

    (a) **Termination by Company.** Company shall have the right to terminate this Agreement upon expiration of the initial Term or expiration of the then current successive renewal Term by providing written notice to Consultant within the thirty (30) calendar days before expiration of the then current Term. Company shall have the right to terminate this Agreement at any time for Cause, effective upon written notice to Consultant exercising such right and specifying the basis for the termination for Cause. If the Company terminates this Agreement for Cause, Consultant shall not be entitled to any further payments under this Agreement, except that if the basis of the termination for Cause is Civil Cause, then Consultant shall be entitled to all Base Fees earned by Consultant, and all Reimbursable Expenses and hourly fees for Special Services incurred by Consultant, prior to the date of the notice of termination. If Company terminates this Agreement without Cause upon the expiration of the initial or any renewal Term and a Notice to Proceed for any Target Area was issued within the one hundred twenty (120) day period prior to the last day of such initial or renewal Term, Company shall pay Consultant, contemporaneous with the giving of the notice of termination, fifty percent (50%) of all of the Base Fees remaining unpaid at termination, determined as if each Notice to Proceed outstanding on such one hundred twentieth (120th) day had resulted in an Acquisition Contract that closed on the day immediately preceding the date of termination, plus any Reimbursable Expenses and hourly fees for Special Services incurred by Consultant up to the date of the notice of termination.

    (b) **Termination by Consultant.** If Company is in default of this Agreement, and such default continues uncured for thirty (30) days after written notice to Company specifying the nature of such default, Consultant shall have the right to terminate this Agreement on written notice to Company. In the event of such termination by Consultant, Company shall pay Consultant within thirty (30) days after the date of such notice of termination, as damages for such default, the then remainder of the Base Fees not theretofore paid to Consultant prior to such termination, determined as if each Notice to Proceed outstanding on such thirtieth (30th) day had resulted in an Acquisition Contract that closed on the day immediately preceding the date of termination, plus payment for Reimbursable Expenses and hourly fees for Special Services incurred by Consultant through the date of termination. Notwithstanding anything herein to the contrary, in the event of death of Tim Locher, this Agreement shall automatically

terminate and neither party shall have any further obligations hereunder except Company shall pay Consultant for any amounts earned or invoiced in accordance with this Agreement prior to such death.

(c)  **Actions on Termination**.  Upon any termination of this Agreement, Consultant shall promptly return to Company all information, materials and documents (including without limitation electronically stored information) in Consultant's possession or control which were prepared by or for Company or which relate to Company or its business, including without limitation all Confidential Information.  The obligations of Consultant pursuant to this Sections 10(c) shall survive the expiration or termination of this Agreement without limitation.

11.  **Notices**.  All notices required or permitted under this Agreement shall be in writing and may be given by receipted hand delivery, by first class registered mail or by Federal Express or other nationally recognized overnight delivery service, postage or delivery costs prepaid, addressed to the parties at the addresses specified on the last page hereof, or to such other address of which either party may notify the other pursuant to this provision.  Notices will be deemed given when received, if delivered by receipted hand delivery, or on the next business day after deposit in the US mail or tender to such overnight delivery service.

12.  **General Provisions**.  This Agreement shall be governed by the laws of the State of New York without regard to the choice-of-law principles thereof, and with the Exhibits is the entire agreement of the parties related to the subject matter hereof.  No amendment or waiver of any provision of this Agreement will be effective unless in a writing signed by the parties.  Consultant shall not assign this Agreement without the prior written consent of Company.  The illegality or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any legal and enforceable provisions hereof.  Any headings used herein are for convenience of reference only and are not a part of this Agreement; nor shall they affect the interpretation hereof.  This Agreement may be executed in multiple counterparts, each of which is an original, true and correct version hereof.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the Effective Date.

**CALAMAR ENTERPRISES, INC.**,
a New York corporation

BY: _Jocelyn_____
Name: _____
Title: _Director - Senior HSG_

Address:   Calamar Enterprises, Inc.
           3949 Forest Parkway, Suite 100
           Wheatfield, NY 14120

**BLUE FOREST LAND GROUP, LLC**,
a Missouri limited liability company

BY: _____
Name:  Timothy M. Locher
Title:   President

Address:   Blue Forest Land Group, LLC
           P.O. BOX 8703
           Prairie Village, KS 66208

## EXHIBIT A: SERVICES

The *"Services"* include the activities described below for a Desired Facility.

1. Site selection services reflected in a Report.

2. Provide assistance in negotiating an Acquisition Contract in the event Company selects a site from the Report for the location of a Desired Facility.

3. Pursuing Local Governmental Approvals.

4. Target Area – Waukee, IA – See Below



# SUMMONS AND COMPLAINT

# EXHIBIT  B

*Kansas City, Kansas.*

## CONSULTING SERVICES AGREEMENT

THIS CONSULTING SERVICES AGREEMENT (the "*Agreement*") is made as of June 15, 2015 (the "*Effective Date*") by and between:

**CALAMAR ENTERPRISES, INC.**, a New York corporation ("*Company*"); and

**BLUE FOREST LAND GROUP, LLC**, a Missouri limited liability company ("*Consultant*").

Company and Consultant agree as follows:

1.    **Definitions.** In addition to words and phrases defined elsewhere throughout this Agreement, the following terms shall have the following meanings:

     a.   "*Acquisition Contract*" means a definitive purchase contract or ground lease entered into by the Company (or an affiliate of the Company) for a Desired Facility within a Target Area identified in a Notice to Proceed.

     b.   "*Cause*" means either (i) Criminal Cause, or (ii) Civil Cause.

     c.   "*Civil Cause*" means Consultant's beach of the terms of this Agreement, which continues uncured for thirty (30) days after written notice specifying the nature of such alleged Civil Cause.

     d.   "*Criminal Cause*" means that Company had a good faith basis to allege that Consultant has committed fraud, misappropriation of funds, or another felony.

     e.   "*Desired Facility*" means any potential development for which Company has issued to Consultant a Notice to Proceed.

     f.   "*Local Governmental Approvals*" means all land use and zoning approvals necessary for the construction or operation of the Desired Facility from the local governmental having jurisdiction over the selected location for the Desired Facility.

     g.   "*Notice to Proceed*" means written notice sent from Company to Consultant that requests Consultant to commence Services within a Target Area identified therein and identifies other relevant criteria determined by Company for consideration in the performance of the Services (i.e. type of facility, range of square footage, maximum acquisition price, etc.).

     h.   "*Report*" means an analysis of potential sites for the Desired Facility within the Target Area and preparation of a ranking of such potential sites, along with recommendations in the discretion of Consultant for altering boundary lines of the Target Area to encompass other potential sites for analysis.

     i.   "*Services*" means the consulting services described in **Exhibit A** attached hereto and incorporated herein by reference.

     j.   "*Target Area*" means a designated geographic area described either textually (i.e. "within x miles of I-35 and 119th Street, Johnson County, Kansas") or on a map with a delineated search area).

2.  **Services.**  Company hereby engages Consultant as an independent contractor to provide the Services, and Consultant hereby undertakes to provide the Services.  Consultant shall hold the discretion as to the time, place, and manner of performance of the Services; provided however, the manner thereof shall be commercially appropriate in relation to the goals and objectives of the Company.

3.  **Term.**  The initial term of this Agreement shall commence on the Effective Date and expire on the last day of the eighteenth (18th) full calendar month following the Effective Date (the "*Term*").  The Term shall automatically renew for successive one (1) year periods unless and until this Agreement is terminated in accordance with Section 10.

4.  **Compensation and Expenses.**  As compensation to Consultant for providing the Services, Company shall compensate Consultant as follows:

    (a)  **Base Fee.**  Company shall pay to Consultant a base fee in the sum of $75,000.00 for each Desired Facility (a "*Base Fee*").  Each Base Fee shall be due and payable, without demand or offset, as follows:

        (i) $22,500.00 with the delivery of a Notice to Proceed.

        (ii) $26,250.00 within fifteen (15) calendar days after full execution of an Acquisition Contract.

        (iii) $26,250.00 contemporaneously with the closing of an Acquisition Contract.

        (iv) If Company abandons pursuit of a Desired Facility before execution of an Acquisition Contract, no further portion of the Base Fee shall be due and Consultant shall not be obligated to provide any further Services with respect to such Desired Facility unless and until a new Notice to Proceed and new Base Fee are provided for such Desired Facility; except however, if the new Notice to Proceed specifies Company's election to proceed with a particular location that was identified and analyzed in the initial Report for the applicable Target Area, then prior balance of the Base Fee shall apply and be due and payable in accordance with this Section 4(a).

        (v) Company and Consultant may, by mutual written agreement entered into prior to the delivery of a Notice to Proceed, establish a different Base Fee and schedule for installment payment thereof with respect to a particular potential Desired Facility, in which event, the provisions of this Agreement (other than subsections 4(a)(i) through 4(a)(iii)) shall nevertheless apply.

    (b)  **Reimbursable Expenses and Hourly Fees for Special Services.**  Company shall reimburse Consultant for expenses, disbursements and costs incurred by Consultant in the course of providing the Services to Company, including without limitation cost of travel (not including gas and mileage in the greater Kansas City area), meals, lodging and similar expenses outside of the greater Kansas City area (collectively, "*Reimbursable Expenses*").  Consultant must obtain pre-approval from Company for any Reimbursable Expenses that exceed $500.  All invoices for Reimbursable Expenses must be accompanied by receipts and a signed expense report from Consultant.  Reimbursable Expenses shall not include the costs of Consultant's general office space equipment and facilities.  In addition to the Base Fees and Reimbursable Expenses, Company shall pay Consultant an hourly fee of $175.00 per hour, chargeable in quarter-hour increments, for time expended by Consultant on activities beyond the scope of

the Services ("*Special Services*"), provided that (i) such Special Services are requested by senior management (vice-president or higher) of Company, and (ii) Consultant notifies Company prior to undertaking such Special Services that Consultant deems such activities to be Special Services under this Agreement. An invoice for Reimbursable Expenses and Special Services shall be due and payable to Consultant within thirty (30) days following Company's receipt of such invoice.

(c)   **Extraordinary Services.** The parties agree to negotiate in good faith an increase in a Base Fee for a Desired Facility in the event the parties experience controversial or extraordinary circumstances beyond the standardized process for obtaining Local Governmental Approvals. Any increase in a Base Fee for a Desired Facility shall be documented in a writing signed by both parties.

(d)   **Payment.** All payments owed to Consultant shall be sent to Consultant at its address for notices, or by wire transfer in accordance with wire instructions provided by Consultant.

5.   **Legal Assistance.** Company and Consultant acknowledge that Husch Blackwell LLP ("*Husch*") may be representing Company (and/or its affiliates) as part of the project team for any Desired Facility. Consultant, however, may utilize the services of Husch, as Consultant deems reasonably appropriate, either on behalf of Company (and/or its affiliates) or Consultant, to assist in the pursuit of Local Governmental Approvals; and Consultant shall be responsible for timely paying all fees charged by Husch for the pursuit of such Local Governmental Approvals. In the course of performing Consultant's Services, Consultant may request that Husch provide other services beyond the pursuit of the Local Governmental Approvals (either on behalf of Company (and/or its affiliates) or Consultant; or both), in which event the Company and Consultant will determine at that time which party will be responsible for Husch's fees for such additional scope of services.

6.   **Relationship of the Parties.** This Agreement creates contractual rights only; and Consultant, for all purposes, shall be considered an independent contractor with respect to Company. Consultant acknowledges that no employment relationship exists between Consultant and Company or either party's affiliates, and Consultant shall not be entitled to any salary, insurance coverage, workers compensation coverage, or other benefits from Company. No party shall be considered a partner, agent or legal representative of the other party for any purpose, and Consultant shall have no power or authority, and at no time shall represent or convey the impression that Consultant has any power or authority, to legally bind or commit Company for any purpose. The parties further acknowledge that Consultant is neither expected nor required to devote continuously throughout the Term all of Consultant's time and efforts in providing the Services, and the amount of hours expended by Consultant in performing the Services may vary from week to week and month to month, but at all times Consultant shall devote such time and attention to providing the Services as is reasonably necessary at such time. Subject to Section 12 below, Consultant may enter into agreements with other entities or individuals to perform services on behalf of said other entities or individuals during the Term of this Agreement.

7.   **Conduct.** Consultant undertakes and agrees to (i) comply with all laws, rules, ordinances and regulations of all applicable federal, state and local authorities in providing the Services, (ii) obtain and maintain, at Consultant's cost, all necessary permits and licenses required to provide the Services, and (iii) in recognition of the ethical and moral principles of Company and its affiliates, provide the Services in manner that would not reasonably be viewed as damaging to the reputation of, or inconsistent with the ethical and moral principles of, Company or its affiliates.

8.   **Taxes.**  Consultant shall be responsible for all federal, state and local taxes for all compensation paid hereunder, including without limitation all social security and employment taxes, and Company (unless required by applicable tax authorities) will not withhold taxes or be liable for taxes related to such compensation.

9.   **Confidentiality.**  Consultant covenants and agrees to treat confidentially and not disclose, and not use or exploit for any purpose other than as specified in this Agreement, any information (whether written or oral) which is known to Consultant to be confidential or proprietary information of Company ("*Confidential Information*"). The term Confidential Information as used herein shall be deemed to include, without limitation, technical information, data, know-how, customer lists, catalogs and price lists, computer records, policies, trade secrets, business strategy, financial data, research, development, processes and techniques, and all other confidential and proprietary information of whatever description that may be divulged to Consultant. Consultant recognizes and acknowledges that (i) the Confidential Information is the property of Company and (ii) damage and irreparable harm could result to Company if such information were used or disclosed (except as authorized expressly in writing by Company), and therefore Consultant consents to injunctive relief and other equitable remedies to prevent such unauthorized use or disclosure.

10.  **Termination.**

   (a)   **Termination by Company.**  Company shall have the right to terminate this Agreement upon expiration of the initial Term or expiration of the then current successive renewal Term by providing written notice to Consultant within the thirty (30) calendar days before expiration of the then current Term. Company shall have the right to terminate this Agreement at any time for Cause, effective upon written notice to Consultant exercising such right and specifying the basis for the termination for Cause. If the Company terminates this Agreement for Cause, Consultant shall not be entitled to any further payments under this Agreement, except that if the basis of the termination for Cause is Civil Cause, then Consultant shall be entitled to all Base Fees earned by Consultant, and all Reimbursable Expenses and hourly fees for Special Services incurred by Consultant, prior to the date of the notice of termination. If Company terminates this Agreement without Cause upon the expiration of the initial or any renewal Term and a Notice to Proceed for any Target Area was issued within the one hundred twenty (120) day period prior to the last day of such initial or renewal Term, Company shall pay Consultant, contemporaneous with the giving of the notice of termination, fifty percent (50%) of all of the Base Fees remaining unpaid at termination, determined as if each Notice to Proceed outstanding on such one hundred twentieth (120th) day had resulted in an Acquisition Contract that closed on the day immediately preceding the date of termination, plus any Reimbursable Expenses and hourly fees for Special Services incurred by Consultant up to the date of the notice of termination.

   (b)   **Termination by Consultant.**  If Company is in default of this Agreement, and such default continues uncured for thirty (30) days after written notice to Company specifying the nature of such default, Consultant shall have the right to terminate this Agreement on written notice to Company. In the event of such termination by Consultant, Company shall pay Consultant within thirty (30) days after the date of such notice of termination, as damages for such default, the then remainder of the Base Fees not theretofore paid to Consultant prior to such termination, determined as if each Notice to Proceed outstanding on such thirtieth (30th) day had resulted in an Acquisition Contract that closed on the day immediately preceding the date of termination, plus payment for Reimbursable Expenses and hourly fees for Special Services incurred by Consultant through the date of termination. Notwithstanding anything herein to the contrary, in the event of death of Tim Locher, this Agreement shall automatically

terminate and neither party shall have any further obligations hereunder except Company shall pay Consultant for any amounts earned or invoiced in accordance with this Agreement prior to such death.

(c)   **Actions on Termination.**   Upon any termination of this Agreement, Consultant shall promptly return to Company all information, materials and documents (including without limitation electronically stored information) in Consultant's possession or control which were prepared by or for Company or which relate to Company or its business, including without limitation all Confidential Information.   The obligations of Consultant pursuant to this Sections 10(c) shall survive the expiration or termination of this Agreement without limitation.

11.   **Notices.**  All notices required or permitted under this Agreement shall be in writing and may be given by receipted hand delivery, by first class registered mail or by Federal Express or other nationally recognized overnight delivery service, postage or delivery costs prepaid, addressed to the parties at the addresses specified on the last page hereof, or to such other address of which either party may notify the other pursuant to this provision. Notices will be deemed given when received, if delivered by receipted hand delivery, or on the next business day after deposit in the US mail or tender to such overnight delivery service.

12.   **General Provisions.**  This Agreement shall be governed by the laws of the State of New York without regard to the choice-of-law principles thereof, and with the Exhibits is the entire agreement of the parties related to the subject matter hereof. No amendment or waiver of any provision of this Agreement will be effective unless in a writing signed by the parties. Consultant shall not assign this Agreement without the prior written consent of Company. The illegality or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any legal and enforceable provisions hereof. Any headings used herein are for convenience of reference only and are not a part of this Agreement, nor shall they affect the interpretation hereof. This Agreement may be executed in multiple counterparts, each of which is an original, true and correct version hereof.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the Effective Date.

| | |
|---|---|
| **CALAMAR ENTERPRISES, INC.,** | **BLUE FOREST LAND GROUP, LLC,** |
| a New York corporation | a Missouri limited liability company |
| | |
| BY: | BY: |
| Name: | Name:  Timothy M. Locher |
| Title: | Title:   President |
| | |
| Address:   Calamar Enterprises, Inc., | Address:   Blue Forest Land Group, LLC |
| 3949 Forest Parkway, Suite 100 | P.O. BOX 8703 |
| Wheatfield, NY 14120 | Prairie Village, KS 66208 |

### EXHIBIT A: SERVICES

The "*Services*" include the activities described below for a Desired Facility.

1. Site selection services reflected in a Report.

2. Provide assistance in negotiating an Acquisition Contract in the event Company selects a site from the Report for the location of a Desired Facility.

3. Pursuing Local Governmental Approvals.

### Kansas City, KS — See Defined Area Below



SUMMONS AND COMPLAINT

EXHIBIT  C

*Lee's Summit, MO*

## CONSULTING SERVICES AGREEMENT

THIS CONSULTING SERVICES AGREEMENT (the *"Agreement"*) is made as of September 17th, 2015 (the *"Effective Date"*) by and between:

**CALAMAR ENTERPRISES, INC.,** a New York corporation (*"Company"*); and

**BLUE FOREST LAND GROUP, LLC,** a Missouri limited liability company (*"Consultant"*).

Company and Consultant agree as follows:

1.  <u>Definitions</u>. In addition to words and phrases defined elsewhere throughout this Agreement, the following terms shall have the following meanings:

    a.  *"Acquisition Contract"* means a definitive purchase contract or ground lease entered into by the Company (or an affiliate of the Company) for a Desired Facility within a Target Area identified in a Notice to Proceed.

    b.  *"Cause"* means either (i) Criminal Cause, or (ii) Civil Cause.

    c.  *"Civil Cause"* means Consultant's beach of the terms of this Agreement, which continues uncured for thirty (30) days after written notice specifying the nature of such alleged Civil Cause.

    d.  *"Criminal Cause"* means that Company had a good faith basis to allege that Consultant has committed fraud, misappropriation of funds, or another felony.

    e.  *"Desired Facility"* means any potential development for which Company has issued to Consultant a Notice to Proceed.

    f.  *"Local Governmental Approvals"* means all land use and zoning approvals necessary for the construction or operation of the Desired Facility from the local governmental having jurisdiction over the selected location for the Desired Facility.

    g.  *"Notice to Proceed"* means written notice sent from Company to Consultant that requests Consultant to commence Services within a Target Area identified therein and identifies other relevant criteria determined by Company for consideration in the performance of the Services (i.e. type of facility, range of square footage, maximum acquisition price, etc.).

    h.  *"Report"* means an analysis of potential sites for the Desired Facility within the Target Area and preparation of a ranking of such potential sites, along with recommendations in the discretion of Consultant for altering boundary lines of the Target Area to encompass other potential sites for analysis.

    i.  *"Services"* means the consulting services described in <u>Exhibit A</u> attached hereto and incorporated herein by reference.

    j.  *"Target Area"* means a designated geographic area described either textually (i.e. "within x miles of I-35 and 119th Street, Johnson County, Kansas") or on a map with a delineated search area).

2.   Services.   Company hereby engages Consultant as an independent contractor to provide the Services, and Consultant hereby undertakes to provide the Services.  Consultant shall hold the discretion as to the time, place, and manner of performance of the Services; provided however, the manner thereof shall be commercially appropriate in relation to the goals and objectives of the Company.

3.   Term.  The initial term of this Agreement shall commence on the Effective Date and expire on the last day of the eighteenth (18th) full calendar month following the Effective Date (the "*Term*").  The Term shall automatically renew for successive one (1) year periods unless and until this Agreement is terminated in accordance with Section 10.

4.   Compensation and Expenses.   As compensation to Consultant for providing the Services, Company shall compensate Consultant as follows:

   (a)   Base Fee.  Company shall pay to Consultant a base fee in the sum of $75,000.00 for each Desired Facility (a "*Base Fee*").  Each Base Fee shall be due and payable, without demand or offset, as follows:

      (i)  $22,500.00 with the delivery of a Notice to Proceed.

      (ii) $26,250.00 within fifteen (15) calendar days after full execution of an Acquisition Contract.

      (iii) $26,250.00 contemporaneously with the closing of an Acquisition Contract.

      (iv) If Company abandons pursuit of a Desired Facility before execution of an Acquisition Contract, no further portion of the Base Fee shall be due and Consultant shall not be obligated to provide any further Services with respect to such Desired Facility unless and until a new Notice to Proceed and new Base Fee are provided for such Desired Facility; except however, if the new Notice to Proceed specifies Company's election to proceed with a particular location that was identified and analyzed in the initial Report for the applicable Target Area, then prior balance of the Base Fee shall apply and be due and payable in accordance with this Section 4(a).

      (v) Company and Consultant may, by mutual written agreement entered into prior to the delivery of a Notice to Proceed, establish a different Base Fee and schedule for installment payment thereof with respect to a particular potential Desired Facility, in which event, the provisions of this Agreement (other than subsections 4(a)(i) through 4(a)(iii)) shall nevertheless apply.

   (b)   Reimbursable Expenses and Hourly Fees for Special Services.  Company shall reimburse Consultant for expenses, disbursements and costs incurred by Consultant in the course of providing the Services to Company, including without limitation cost of travel (not including gas and mileage in the greater Kansas City area), meals, lodging and similar expenses outside of the greater Kansas City area (collectively, "*Reimbursable Expenses*").  Consultant must obtain pre-approval from Company for any Reimbursable Expenses that exceed $500.  All invoices for Reimbursable Expenses must be accompanied by receipts and a signed expense report from Consultant.  Reimbursable Expenses shall not include the costs of Consultant's general office space equipment and facilities.  In addition to the Base Fees and Reimbursable Expenses, Company shall pay Consultant an hourly fee of $175.00 per hour, chargeable in quarter-hour increments, for time expended by Consultant on activities beyond the scope of

KCP-4487498-3

the Services ("*Special Services*"), provided that (i) such Special Services are requested by senior management (vice-president or higher) of Company, and (ii) Consultant notifies Company prior to undertaking such Special Services that Consultant deems such activities to be Special Services under this Agreement. An invoice for Reimbursable Expenses and Special Services shall be due and payable to Consultant within thirty (30) days following Company's receipt of such invoice.

(c)   **Extraordinary Services**. The parties agree to negotiate in good faith an increase in a Base Fee for a Desired Facility in the event the parties experience controversial or extraordinary circumstances beyond the standardized process for obtaining Local Governmental Approvals. Any increase in a Base Fee for a Desired Facility shall be documented in a writing signed by both parties.

(d)   **Payment**. All payments owed to Consultant shall be sent to Consultant at its address for notices, or by wire transfer in accordance with wire instructions provided by Consultant.

5.   **Legal Assistance**. Company and Consultant acknowledge that Husch Blackwell LLP ("*Husch*") may be representing Company (and/or its affiliates) as part of the project team for any Desired Facility. Consultant, however, may utilize the services of Husch, as Consultant deems reasonably appropriate, either on behalf of Company (and/or its affiliates) or Consultant, to assist in the pursuit of Local Governmental Approvals; and Consultant shall be responsible for timely paying all fees charged by Husch for the pursuit of such Local Governmental Approvals. In the course of performing Consultant's Services, Consultant may request that Husch provide other services beyond the pursuit of the Local Governmental Approvals (either on behalf of Company (and/or its affiliates) or Consultant, or both), in which event the Company and Consultant will determine at that time which party will be responsible for Husch's fees for such additional scope of services.

6.   **Relationship of the Parties**. This Agreement creates contractual rights only; and Consultant, for all purposes, shall be considered an independent contractor with respect to Company. Consultant acknowledges that no employment relationship exists between Consultant and Company or either party's affiliates, and Consultant shall not be entitled to any salary, insurance coverage, workers compensation coverage, or other benefits from Company. No party shall be considered a partner, agent or legal representative of the other party for any purpose, and Consultant shall have no power or authority, and at no time shall represent or convey the impression that Consultant has any power or authority, to legally bind or commit Company for any purpose. The parties further acknowledge that Consultant is neither expected nor required to devote continuously throughout the Term all of Consultant's time and efforts in providing the Services, and the amount of hours expended by Consultant in performing the Services may vary from week to week and month to month, but at all times Consultant shall devote such time and attention to providing the Services as is reasonably necessary at such time. Subject to Section 12 below, Consultant may enter into agreements with other entities or individuals to perform services on behalf of said other entities or individuals during the Term of this Agreement.

7.   **Conduct**. Consultant undertakes and agrees to (i) comply with all laws, rules, ordinances and regulations of all applicable federal, state and local authorities in providing the Services, (ii) obtain and maintain, at Consultant's cost, all necessary permits and licenses required to provide the Services, and (iii) in recognition of the ethical and moral principles of Company and its affiliates, provide the Services in manner that would not reasonably be viewed as damaging to the reputation of, or inconsistent with the ethical and moral principles of, Company or its affiliates.

8. <u>Taxes</u>. Consultant shall be responsible for all federal, state and local taxes for all compensation paid hereunder, including without limitation all social security and employment taxes, and Company (unless required by applicable tax authorities) will not withhold taxes or be liable for taxes related to such compensation.

9. <u>Confidentiality</u>. Consultant covenants and agrees to treat confidentially and not disclose, and not use or exploit for any purpose other than as specified in this Agreement, any information (whether written or oral) which is known to Consultant to be confidential or proprietary information of Company ("*Confidential Information*"). The term Confidential Information as used herein shall be deemed to include, without limitation, technical information, data, know-how, customer lists, catalogs and price lists, computer records, policies, trade secrets, business strategy, financial data, research, development, processes and techniques, and all other confidential and proprietary information of whatever description that may be divulged to Consultant. Consultant recognizes and acknowledges that (i) the Confidential Information is the property of Company and (ii) damage and irreparable harm could result to Company if such information were used or disclosed (except as authorized expressly in writing by Company), and therefore Consultant consents to injunctive relief and other equitable remedies to prevent such unauthorized use or disclosure.

10. <u>Termination</u>.

   (a) <u>Termination by Company</u>. Company shall have the right to terminate this Agreement upon expiration of the initial Term or expiration of the then current successive renewal Term by providing written notice to Consultant within the thirty (30) calendar days before expiration of the then current Term. Company shall have the right to terminate this Agreement at any time for Cause, effective upon written notice to Consultant exercising such right and specifying the basis for the termination for Cause. If the Company terminates this Agreement for Cause, Consultant shall not be entitled to any further payments under this Agreement, except that if the basis of the termination for Cause is Civil Cause, then Consultant shall be entitled to all Base Fees earned by Consultant, and all Reimbursable Expenses and hourly fees for Special Services incurred by Consultant, prior to the date of the notice of termination. If Company terminates this Agreement without Cause upon the expiration of the initial or any renewal Term and a Notice to Proceed for any Target Area was issued within the one hundred twenty (120) day period prior to the last day of such initial or renewal Term, Company shall pay Consultant, contemporaneous with the giving of the notice of termination, fifty percent (50%) of all of the Base Fees remaining unpaid at termination, determined as if each Notice to Proceed outstanding on such one hundred twentieth (120th) day had resulted in an Acquisition Contract that closed on the day immediately preceding the date of termination, plus any Reimbursable Expenses and hourly fees for Special Services incurred by Consultant up to the date of the notice of termination.

   (b) <u>Termination by Consultant</u>. If Company is in default of this Agreement, and such default continues uncured for thirty (30) days after written notice to Company specifying the nature of such default, Consultant shall have the right to terminate this Agreement on written notice to Company. In the event of such termination by Consultant, Company shall pay Consultant within thirty (30) days after the date of such notice of termination, as damages for such default, the then remainder of the Base Fees not theretofore paid to Consultant prior to such termination, determined as if each Notice to Proceed outstanding on such thirtieth (30th) day had resulted in an Acquisition Contract that closed on the day immediately preceding the date of termination, plus payment for Reimbursable Expenses and hourly fees for Special Services incurred by Consultant through the date of termination. Notwithstanding anything herein to the contrary, in the event of death of Tim Locher, this Agreement shall automatically

KCP-4487498-3

terminate and neither party shall have any further obligations hereunder except Company shall pay Consultant for any amounts earned or invoiced in accordance with this Agreement prior to such death.

(c) <u>Actions on Termination</u>. Upon any termination of this Agreement, Consultant shall promptly return to Company all information, materials and documents (including without limitation electronically stored information) in Consultant's possession or control which were prepared by or for Company or which relate to Company or its business, including without limitation all Confidential Information. The obligations of Consultant pursuant to this Sections 10(c) shall survive the expiration or termination of this Agreement without limitation.

11. <u>Notices</u>. All notices required or permitted under this Agreement shall be in writing and may be given by receipted hand delivery, by first class registered mail or by Federal Express or other nationally recognized overnight delivery service, postage or delivery costs prepaid, addressed to the parties at the addresses specified on the last page hereof, or to such other address of which either party may notify the other pursuant to this provision. Notices will be deemed given when received, if delivered by receipted hand delivery, or on the next business day after deposit in the US mail or tender to such overnight delivery service.

12. <u>General Provisions</u>. This Agreement shall be governed by the laws of the State of New York without regard to the choice-of-law principles thereof, and with the Exhibits is the entire agreement of the parties related to the subject matter hereof. No amendment or waiver of any provision of this Agreement will be effective unless in a writing signed by the parties. Consultant shall not assign this Agreement without the prior written consent of Company. The illegality or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any legal and enforceable provisions hereof. Any headings used herein are for convenience of reference only and are not a part of this Agreement, nor shall they affect the interpretation hereof. This Agreement may be executed in multiple counterparts, each of which is an original, true and correct version hereof.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the Effective Date.

| | |
|---|---|
| **CALAMAR ENTERPRISES, INC.,** <br> a New York corporation | **BLUE FOREST LAND GROUP, LLC,** <br> a Missouri limited liability company |
| BY: | BY: |
| Name: | Name: Timothy M. Locher |
| Title: SR. Hausing Dev. Director | Title: President |
| Address:   Calamar Enterprises, Inc. <br> 3949 Forest Parkway, Suite 100 <br> Wheatfield, NY 14120 | Address:   Blue Forest Land Group, LLC <br> P.O. BOX 8703 <br> Prairie Village, KS 66208 |

## EXHIBIT A: SERVICES

The *"Services"* include the activities described below for a Desired Facility.

1. Site selection services reflected in a Report.

2. Provide assistance in negotiating an Acquisition Contract in the event Company selects a site from the Report for the location of a Desired Facility.

3. Pursuing Local Governmental Approvals.

4. Target Area – Lee's Summit, MO – See Below



# SUMMONS AND COMPLAINT

# EXHIBIT  D

Case 1:16-cv-00686-EAW-HKS Document 1-3 Filed 08/23/16 Page 36 of 62

*Altoona, IA*

## CONSULTING SERVICES AGREEMENT

THIS CONSULTING SERVICES AGREEMENT (the "*Agreement*") is made as of December 3th, 2015 (the "*Effective Date*") by and between:

**CALAMAR ENTERPRISES, INC.**, a New York corporation ("*Company*"); and

**BLUE FOREST LAND GROUP, LLC**, a Missouri limited liability company ("*Consultant*").

Company and Consultant agree as follows:

1. **Definitions**. In addition to words and phrases defined elsewhere throughout this Agreement, the following terms shall have the following meanings:

   a. "*Acquisition Contract*" means a definitive purchase contract or ground lease entered into by the Company (or an affiliate of the Company) for a Desired Facility within a Target Area identified in a Notice to Proceed.

   b. "*Cause*" means either (i) Criminal Cause, or (ii) Civil Cause.

   c. "*Civil Cause*" means Consultant's beach of the terms of this Agreement, which continues uncured for thirty (30) days after written notice specifying the nature of such alleged Civil Cause.

   d. "*Criminal Cause*" means that Company had a good faith basis to allege that Consultant has committed fraud, misappropriation of funds, or another felony.

   e. "*Desired Facility*" means any potential development for which Company has issued to Consultant a Notice to Proceed.

   f. "*Local Governmental Approvals*" means all land use and zoning approvals necessary for the construction or operation of the Desired Facility from the local governmental having jurisdiction over the selected location for the Desired Facility.

   g. "*Notice to Proceed*" means written notice sent from Company to Consultant that requests Consultant to commence Services within a Target Area identified therein and identifies other relevant criteria determined by Company for consideration in the performance of the Services (i e. type of facility, range of square footage, maximum acquisition price, etc.)

   h. "*Report*" means an analysis of potential sites for the Desired Facility within the Target Area and preparation of a ranking of such potential sites, along with recommendations in the discretion of Consultant for altering boundary lines of the Target Area to encompass other potential sites for analysis.

   i. "*Services*" means the consulting services described in **Exhibit A** attached hereto and incorporated herein by reference.

   j. "*Target Area*" means a designated geographic area described either textually (i e. "within x miles of I-35 and 119th Street, Johnson County, Kansas") or on a map with a delineated search area)

2.   <u>Services</u>.  Company hereby engages Consultant as an independent contractor to provide the Services, and Consultant hereby undertakes to provide the Services.  Consultant shall hold the discretion as to the time, place, and manner of performance of the Services; provided however, the manner thereof shall be commercially appropriate in relation to the goals and objectives of the Company.

3.   <u>Term</u>.  The initial term of this Agreement shall commence on the Effective Date and expire on the last day of the eighteenth (18th) full calendar month following the Effective Date (the *"Term"*).  The Term shall automatically renew for successive one (1) year periods unless and until this Agreement is terminated in accordance with Section 10.

4.   <u>Compensation and Expenses</u>.  As compensation to Consultant for providing the Services, Company shall compensate Consultant as follows:

   (a)   <u>Base Fee</u>.  Company shall pay to Consultant a base fee in the sum of $75,000.00 for each Desired Facility (a *"Base Fee"*).  Each Base Fee shall be due and payable, without demand or offset, as follows:

      (i)   $22,500.00 with the delivery of a Notice to Proceed.  In addition to the Base Fee, Company shall also pay Consultant $2,000 for meals, lodging, travel and miscellaneous expenses.

      (ii)   $26,250.00 within fifteen (15) calendar days after full execution of an Acquisition Contract.  In addition to the Base Fee, Company shall also pay Consultant $2,000 for meals, lodging, travel and miscellaneous expenses.

      (iii)   $26,250.00 contemporaneously with the closing of an Acquisition Contract.  In addition to the Base Fee, Company shall also pay Consultant $2,000 for meals, lodging, travel and miscellaneous expenses.

      (iv)   If Company abandons pursuit of a Desired Facility before execution of an Acquisition Contract, no further portion of the Base Fee shall be due and Consultant shall not be obligated to provide any further Services with respect to such Desired Facility unless and until a new Notice to Proceed and new Base Fee are provided for such Desired Facility; except however, if the new Notice to Proceed specifies Company's election to proceed with a particular location that was identified and analyzed in the initial Report for the applicable Target Area, then prior balance of the Base Fee shall apply and be due and payable in accordance with this Section 4(a)

      (v)   Company and Consultant may, by mutual written agreement entered into prior to the delivery of a Notice to Proceed, establish a different Base Fee and schedule for installment payment thereof with respect to a particular potential Desired Facility, in which event, the provisions of this Agreement (other than subsections 4(a)(i) through 4(a)(iii)) shall nevertheless apply

   (b)   <u>Reimbursable Expenses and Hourly Fees for Special Services</u>.  Company shall pay Consultant for cost of travel (as described in Section 4(a)) including meals, travel, lodging and similar expenses outside of the greater Kansas City area.  Company shall reimburse Consultant expenses, disbursements and costs incurred by Consultant in the course of providing the Services to Company, (collectively, *"Reimbursable Expenses"*)  Consultant must obtain pre-approval from Company for any Reimbursable Expenses that exceed $500

All invoices for Reimbursable Expenses must be accompanied by receipts and a signed expense report from Consultant. Reimbursable Expenses shall not include the costs of Consultant's general office space equipment and facilities. In addition to the Base Fees and Reimbursable Expenses, Company shall pay Consultant an hourly fee of $175.00 per hour, chargeable in quarter-hour increments, for time expended by Consultant on activities beyond the scope of the Services ("*Special Services*"), provided that (i) such Special Services are requested by senior management (vice-president or higher) of Company, and (ii) Consultant notifies Company prior to undertaking such Special Services that Consultant deems such activities to be Special Services under this Agreement. An invoice for Reimbursable Expenses and Special Services shall be due and payable to Consultant within thirty (30) days following Company's receipt of such invoice. (c)   Extraordinary Services.  The parties agree to negotiate in good faith an increase in a Base Fee for a Desired Facility in the event the parties experience controversial or extraordinary circumstances beyond the standardized process for obtaining Local Governmental Approvals. Any increase in a Base Fee for a Desired Facility shall be documented in a writing signed by both parties.

(d)   Payment.  All payments owed to Consultant shall be sent to Consultant at its address for notices, or by wire transfer in accordance with wire instructions provided by Consultant.

5.   Legal Assistance.  Company and Consultant acknowledge that Husch Blackwell LLP ("*Husch*") may be representing Company (and/or its affiliates) as part of the project team for any Desired Facility. Consultant, however, may utilize the services of Husch, as Consultant deems reasonably appropriate, either on behalf of Company (and/or its affiliates) or Consultant, to assist in the pursuit of Local Governmental Approvals; and Consultant shall be responsible for timely paying all fees charged by Husch for the pursuit of such Local Governmental Approvals. In the course of performing Consultant's Services, Consultant may request that Husch provide other services beyond the pursuit of the Local Governmental Approvals (either on behalf of Company (and/or its affiliates) or Consultant, or both), in which event the Company and Consultant will determine at that time which party will be responsible for Husch's fees for such additional scope of services.

6.   Relationship of the Parties.  This Agreement creates contractual rights only; and Consultant, for all purposes, shall be considered an independent contractor with respect to Company. Consultant acknowledges that no employment relationship exists between Consultant and Company or either party's affiliates, and Consultant shall not be entitled to any salary, insurance coverage, workers compensation coverage, or other benefits from Company. No party shall be considered a partner, agent or legal representative of the other party for any purpose, and Consultant shall have no power or authority, and at no time shall represent or convey the impression that Consultant has any power or authority, to legally bind or commit Company for any purpose. The parties further acknowledge that Consultant is neither expected nor required to devote continuously throughout the Term all of Consultant's time and efforts in providing the Services, and the amount of hours expended by Consultant in performing the Services may vary from week to week and month to month, but at all times Consultant shall devote such time and attention to providing the Services as is reasonably necessary at such time. Subject to Section 12 below, Consultant may enter into agreements with other entities or individuals to perform services on behalf of said other entities or individuals during the Term of this Agreement.

7   Conduct   Consultant undertakes and agrees to (i) comply with all laws, rules, ordinances and regulations of all applicable federal, state and local authorities in providing the Services, (ii) obtain and maintain, at Consultant's cost, all necessary permits and licenses required to provide the Services, and (iii) in recognition of the ethical and moral principles of Company and its affiliates,

provide the Services in manner that would not reasonably be viewed as damaging to the reputation of, or inconsistent with the ethical and moral principles of, Company or its affiliates.

8.  **Taxes.** Consultant shall be responsible for all federal, state and local taxes for all compensation paid hereunder, including without limitation all social security and employment taxes, and Company (unless required by applicable tax authorities) will not withhold taxes or be liable for taxes related to such compensation.

9.  **Confidentiality.** Consultant covenants and agrees to treat confidentially and not disclose, and not use or exploit for any purpose other than as specified in this Agreement, any information (whether written or oral) which is known to Consultant to be confidential or proprietary information of Company ("*Confidential Information*"). The term Confidential Information as used herein shall be deemed to include, without limitation, technical information, data, know-how, customer lists, catalogs and price lists, computer records, policies, trade secrets, business strategy, financial data, research, development, processes and techniques, and all other confidential and proprietary information of whatever description that may be divulged to Consultant. Consultant recognizes and acknowledges that (i) the Confidential Information is the property of Company and (ii) damage and irreparable harm could result to Company if such information were used or disclosed (except as authorized expressly in writing by Company), and therefore Consultant consents to injunctive relief and other equitable remedies to prevent such unauthorized use or disclosure.

10.  **Termination.**

    (a)  **Termination by Company.** Company shall have the right to terminate this Agreement upon expiration of the initial Term or expiration of the then current successive renewal Term by providing written notice to Consultant within the thirty (30) calendar days before expiration of the then current Term. Company shall have the right to terminate this Agreement at any time for Cause, effective upon **written** notice to Consultant exercising such right and specifying the basis for the termination for Cause. If the Company terminates this Agreement for Cause, Consultant shall not be entitled to any further payments under this Agreement, except that if the basis of the termination for Cause is Civil Cause, then Consultant shall be entitled to all Base Fees earned by Consultant, and all Reimbursable Expenses and hourly fees for Special Services incurred by Consultant, prior to the date of the notice of termination. If Company terminates this Agreement without Cause upon the expiration of the initial or any renewal Term and a Notice to Proceed for any Target Area was issued within the one hundred twenty (120) day period prior to the last day of such initial or renewal Term, Company shall pay Consultant, contemporaneous with the giving of the notice of termination, fifty percent (50%) of all of the Base Fees remaining unpaid at termination, determined as if each Notice to Proceed outstanding on such one hundred twentieth (120th) day had resulted in an Acquisition Contract that closed on the day immediately preceding the date of termination, plus any Reimbursable Expenses and hourly fees for Special Services incurred by Consultant up to the date of the notice of termination.

    (b)  **Termination by Consultant.** If Company is in default of this Agreement, and such default continues uncured for thirty (30) days after written notice to Company specifying the nature of such default, Consultant shall have the right to terminate this Agreement on written notice to Company. In the event of such termination by Consultant, Company shall pay Consultant within thirty (30) days after the date of such notice of termination, as damages for such default, the then remainder of the Base Fees not theretofore paid to Consultant prior to such termination, determined as if each Notice to Proceed outstanding on such thirtieth (30th) day had resulted in an Acquisition Contract that closed on the day immediately preceding the date

of termination, plus payment for Reimbursable Expenses and hourly fees for Special Services incurred by Consultant through the date of termination. Notwithstanding anything herein to the contrary, in the event of death of Tim Locher, this Agreement shall automatically terminate and neither party shall have any further obligations hereunder except Company shall pay Consultant for any amounts earned or invoiced in accordance with this Agreement prior to such death.

(c)    **Actions on Termination.**  Upon any termination of this Agreement, Consultant shall promptly return to Company all information, materials and documents (including without limitation electronically stored information) in Consultant's possession or control which were prepared by or for Company or which relate to Company or its business, including without limitation all Confidential Information.  The obligations of Consultant pursuant to this Sections 10(c) shall survive the expiration or termination of this Agreement without limitation.

11.  **Notices.**  All notices required or permitted under this Agreement shall be in writing and may be given by receipted hand delivery, by first class registered mail or by Federal Express or other nationally recognized overnight delivery service, postage or delivery costs prepaid, addressed to the parties at the addresses specified on the last page hereof, or to such other address of which either party may notify the other pursuant to this provision. Notices will be deemed given when received, if delivered by receipted hand delivery, or on the next business day after deposit in the US mail or tender to such overnight delivery service.

12.  **General Provisions.**  This Agreement shall be governed by the laws of the State of New York without regard to the choice-of-law principles thereof, and with the Exhibits is the entire agreement of the parties related to the subject matter hereof. No amendment or waiver of any provision of this Agreement will be effective unless in a writing signed by the parties. Consultant shall not assign this Agreement without the prior written consent of Company. The illegality or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any legal and enforceable provisions hereof. Any headings used herein are for convenience of reference only and are not a part of this Agreement, nor shall they affect the interpretation hereof. This Agreement may be executed in multiple counterparts, each of which is an original, true and correct version hereof.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the Effective Date.

| CALAMAR ENTERPRISES, INC., a New York corporation | BLUE FOREST LAND GROUP, LLC, a Missouri limited liability company |
|---|---|
| BY: | BY: |
| Name: Jocelyn B. Loos | Name: Timothy M. Locher |
| Title: Sr. Housing Director | Title: President |
| Address:    Calamar Enterprises, Inc. 3949 Forest Parkway, Suite 100 Wheatfield, NY 14120 | Address:    Blue Forest Land Group, LLC P O BOX 8703 Prairie Village, KS 66208 |

## EXHIBIT A: SERVICES

The *"Services"* include the activities described below for a Desired Facility.

1.  Site selection services reflected in a Report.

2.  Provide assistance in negotiating an Acquisition Contract in the event Company selects a site from the Report for the location of a Desired Facility.

3.  Pursuing Local Governmental Approvals.

4.  Target Area – Altoona, IA – See Exhibit below for radius



# SUMMONS AND COMPLAINT

# EXHIBIT  E

*Western Wichita, KS*

## CONSULTING SERVICES AGREEMENT

THIS CONSULTING SERVICES AGREEMENT (the "*Agreement*") is made as of December 3[th], 2015 (the "*Effective Date*") by and between:

**CALAMAR ENTERPRISES, INC.**, a New York corporation ("*Company*"); and

**BLUE FOREST LAND GROUP, LLC**, a Missouri limited liability company ("*Consultant*").

Company and Consultant agree as follows:

1.  **Definitions.**  In addition to words and phrases defined elsewhere throughout this Agreement, the following terms shall have the following meanings:

    a.  "*Acquisition Contract*" means a definitive purchase contract or ground lease entered into by the Company (or an affiliate of the Company) for a Desired Facility within a Target Area identified in a Notice to Proceed.

    b.  "*Cause*" means either (i) Criminal Cause, or (ii) Civil Cause.

    c.  "*Civil Cause*" means Consultant's beach of the terms of this Agreement, which continues uncured for thirty (30) days after written notice specifying the nature of such alleged Civil Cause.

    d.  "*Criminal Cause*" means that Company had a good faith basis to allege that Consultant has committed fraud, misappropriation of funds, or another felony.

    e.  "*Desired Facility*" means any potential development for which Company has issued to Consultant a Notice to Proceed.

    f.  "*Local Governmental Approvals*" means all land use and zoning approvals necessary for the construction or operation of the Desired Facility from the local governmental having jurisdiction over the selected location for the Desired Facility.

    g.  "*Notice to Proceed*" means written notice sent from Company to Consultant that requests Consultant to commence Services within a Target Area identified therein and identifies other relevant criteria determined by Company for consideration in the performance of the Services (i.e. type of facility, range of square footage, maximum acquisition price, etc.).

    h.  "*Report*" means an analysis of potential sites for the Desired Facility within the Target Area and preparation of a ranking of such potential sites, along with recommendations in the discretion of Consultant for altering boundary lines of the Target Area to encompass other potential sites for analysis.

    i.  "*Services*" means the consulting services described in **Exhibit A** attached hereto and incorporated herein by reference.

    j.  "*Target Area*" means a designated geographic area described either textually (i.e. "within x miles of I-35 and 119[th] Street, Johnson County, Kansas") or on a map with a delineated search area).

2.  **Services.**  Company hereby engages Consultant as an independent contractor to provide the Services, and Consultant hereby undertakes to provide the Services.  Consultant shall hold the discretion as to the time, place, and manner of performance of the Services; provided however, the manner thereof shall be commercially appropriate in relation to the goals and objectives of the Company.

3.  **Term.**  The initial term of this Agreement shall commence on the Effective Date and expire on the last day of the eighteenth (18th) full calendar month following the Effective Date (the "*Term*").  The Term shall automatically renew for successive one (1) year periods unless and until this Agreement is terminated in accordance with Section 10.

4.  **Compensation and Expenses.**  As compensation to Consultant for providing the Services, Company shall compensate Consultant as follows:

    (a)  **Base Fee.**  Company shall pay to Consultant a base fee in the sum of $75,000.00 for each Desired Facility (a "*Base Fee*").  Each Base Fee shall be due and payable, without demand or offset, as follows:

    (i)  $22,500.00 with the delivery of a Notice to Proceed.  In addition to the Base Fee, Company shall also pay Consultant $2,000 for meals, lodging, travel and miscellaneous expenses.

    (ii)  $26,250.00 within fifteen (15) calendar days after full execution of an Acquisition Contract.  In addition to the Base Fee, Company shall also pay Consultant $2,000 for meals, lodging, travel and miscellaneous expenses.

    (iii)  $26,250.00 contemporaneously with the closing of an Acquisition Contract.  In addition to the Base Fee, Company shall also pay Consultant $2,000 for meals, lodging, travel and miscellaneous expenses.

    (iv)  If Company abandons pursuit of a Desired Facility before execution of an Acquisition Contract, no further portion of the Base Fee shall be due and Consultant shall not be obligated to provide any further Services with respect to such Desired Facility unless and until a new Notice to Proceed and new Base Fee are provided for such Desired Facility; except however, if the new Notice to Proceed specifies Company's election to proceed with a particular location that was identified and analyzed in the initial Report for the applicable Target Area, then prior balance of the Base Fee shall apply and be due and payable in accordance with this Section 4(a).

    (v)  Company and Consultant may, by mutual written agreement entered into prior to the delivery of a Notice to Proceed, establish a different Base Fee and schedule for installment payment thereof with respect to a particular potential Desired Facility, in which event, the provisions of this Agreement (other than subsections 4(a)(i) through 4(a)(iii)) shall nevertheless apply.

    (b)  **Reimbursable Expenses and Hourly Fees for Special Services.**  Company shall pay Consultant for cost of travel (as described in Section 4(a)) including meals, travel, lodging and similar expenses outside of the greater Kansas City area.  Company shall reimburse Consultant expenses, disbursements and costs incurred by Consultant in the course of providing the Services to Company, (collectively, "*Reimbursable Expenses*").  Consultant must obtain pre-approval from Company for any Reimbursable Expenses that exceed $500.

All invoices for Reimbursable Expenses must be accompanied by receipts and a signed expense report from Consultant. Reimbursable Expenses shall not include the costs of Consultant's general office space equipment and facilities. In addition to the Base Fees and Reimbursable Expenses, Company shall pay Consultant an hourly fee of $175.00 per hour, chargeable in quarter-hour increments, for time expended by Consultant on activities beyond the scope of the Services ("*Special Services*"), provided that (i) such Special Services are requested by senior management (vice-president or higher) of Company, and (ii) Consultant notifies Company prior to undertaking such Special Services that Consultant deems such activities to be Special Services under this Agreement. An invoice for Reimbursable Expenses and Special Services shall be due and payable to Consultant within thirty (30) days following Company's receipt of such invoice. (c)    **Extraordinary Services**:    The parties agree to negotiate in good faith an increase in a Base Fee for a Desired Facility in the event the parties experience controversial or extraordinary circumstances beyond the standardized process for obtaining Local Governmental Approvals. Any increase in a Base Fee for a Desired Facility shall be documented in a writing signed by both parties.

(d)    **Payment**. All payments owed to Consultant shall be sent to Consultant at its address for notices, or by wire transfer in accordance with wire instructions provided by Consultant.

5.    **Legal Assistance**. Company and Consultant acknowledge that Husch Blackwell LLP ("*Husch*") may be representing Company (and/or its affiliates) as part of the project team for any Desired Facility. Consultant, however, may utilize the services of Husch, as Consultant deems reasonably appropriate, either on behalf of Company (and/or its affiliates) or Consultant, to assist in the pursuit of Local Governmental Approvals; and Consultant shall be responsible for timely paying all fees charged by Husch for the pursuit of such Local Governmental Approvals. In the course of performing Consultant's Services, Consultant may request that Husch provide other services beyond the pursuit of the Local Governmental Approvals (either on behalf of Company (and/or its affiliates) or Consultant, or both), in which event the Company and Consultant will determine at that time which party will be responsible for Husch's fees for such additional scope of services.

6.    **Relationship of the Parties**. This Agreement creates contractual rights only; and Consultant, for all purposes, shall be considered an independent contractor with respect to Company. Consultant acknowledges that no employment relationship exists between Consultant and Company or either party's affiliates, and Consultant shall not be entitled to any salary, insurance coverage, workers compensation coverage, or other benefits from Company. No party shall be considered a partner, agent or legal representative of the other party for any purpose, and Consultant shall have no power or authority, and at no time shall represent or convey the impression that Consultant has any power or authority, to legally bind or commit Company for any purpose. The parties further acknowledge that Consultant is neither expected nor required to devote continuously throughout the Term all of Consultant's time and efforts in providing the Services, and the amount of hours expended by Consultant in performing the Services may vary from week to week and month to month, but at all times Consultant shall devote such time and attention to providing the Services as is reasonably necessary at such time. Subject to Section 12 below, Consultant may enter into agreements with other entities or individuals to perform services on behalf of said other entities or individuals during the Term of this Agreement.

7.    **Conduct**. Consultant undertakes and agrees to (i) comply with all laws, rules, ordinances and regulations of all applicable federal, state and local authorities in providing the Services, (ii) obtain and maintain, at Consultant's cost, all necessary permits and licenses required to provide the Services, and (iii) in recognition of the ethical and moral principles of Company and its affiliates,

provide the Services in manner that would not reasonably be viewed as damaging to the reputation of, or inconsistent with the ethical and moral principles of, Company or its affiliates.

8.    **Taxes.** Consultant shall be responsible for all federal, state and local taxes for all compensation paid hereunder, including without limitation all social security and employment taxes, and Company (unless required by applicable tax authorities) will not withhold taxes or be liable for taxes related to such compensation.

9.    **Confidentiality.** Consultant covenants and agrees to treat confidentially and not disclose, and not use or exploit for any purpose other than as specified in this Agreement, any information (whether written or oral) which is known to Consultant to be confidential or proprietary information of Company (***Confidential Information***"). The term Confidential Information as used herein shall be deemed to include, without limitation, technical information, data, know-how, customer lists, catalogs and price lists, computer records, policies, trade secrets, business strategy, financial data, research, development, processes and techniques, and all other confidential and proprietary information of whatever description that may be divulged to Consultant. Consultant recognizes and acknowledges that (i) the Confidential Information is the property of Company and (ii) damage and irreparable harm could result to Company if such information were used or disclosed (except as authorized expressly in writing by Company), and therefore Consultant consents to injunctive relief and other equitable remedies to prevent such unauthorized use or disclosure.

10.    **Termination.**

(a)    **Termination by Company.** Company shall have the right to terminate this Agreement upon expiration of the initial Term or expiration of the then current successive renewal Term by providing written notice to Consultant within the thirty (30) calendar days before expiration of the then current Term. Company shall have the right to terminate this Agreement at any time for Cause, effective upon written notice to Consultant exercising such right and specifying the basis for the termination for Cause. If the Company terminates this Agreement for Cause, Consultant shall not be entitled to any further payments under this Agreement, except that if the basis of the termination for Cause is Civil Cause, then Consultant shall be entitled to all Base Fees earned by Consultant, and all Reimbursable Expenses and hourly fees for Special Services incurred by Consultant, prior to the date of the notice of termination. If Company terminates this Agreement without Cause upon the expiration of the initial or any renewal Term and a Notice to Proceed for any Target Area was issued within the one hundred twenty (120) day period prior to the last day of such initial or renewal Term, Company shall pay Consultant, contemporaneous with the giving of the notice of termination, fifty percent (50%) of all of the Base Fees remaining unpaid at termination, determined as if each Notice to Proceed outstanding on such one hundred twentieth (120th) day had resulted in an Acquisition Contract that closed on the day immediately preceding the date of termination, plus any Reimbursable Expenses and hourly fees for Special Services incurred by Consultant up to the date of the notice of termination.

(b)    **Termination by Consultant.** If Company is in default of this Agreement, and such default continues uncured for thirty (30) days after written notice to Company specifying the nature of such default, Consultant shall have the right to terminate this Agreement on written notice to Company. In the event of such termination by Consultant, Company shall pay Consultant within thirty (30) days after the date of such notice of termination, as damages for such default, the then remainder of the Base Fees not theretofore paid to Consultant prior to such termination, determined as if each Notice to Proceed outstanding on such thirtieth (30th) day had resulted in an Acquisition Contract that closed on the day immediately preceding the date

of termination, plus payment for Reimbursable Expenses and hourly fees for Special Services incurred by Consultant through the date of termination. Notwithstanding anything herein to the contrary, in the event of death of Tim Locher, this Agreement shall automatically terminate and neither party shall have any further obligations hereunder except Company shall pay Consultant for any amounts earned or invoiced in accordance with this Agreement prior to such death.

(c)    **Actions on Termination.**  Upon any termination of this Agreement, Consultant shall promptly return to Company all information, materials and documents (including without limitation electronically stored information) in Consultant's possession or control which were prepared by or for Company or which relate to Company or its business, including without limitation all Confidential Information. The obligations of Consultant pursuant to this Sections 10(c) shall survive the expiration or termination of this Agreement without limitation.

11.    **Notices.**  All notices required or permitted under this Agreement shall be in writing and may be given by receipted hand delivery, by first class registered mail or, by Federal Express or other nationally recognized overnight delivery service, postage or delivery costs prepaid, addressed to the parties at the addresses specified on the last page hereof, or to such other address of which either party may notify the other pursuant to this provision. Notices will be deemed given when received, if delivered by receipted hand delivery, or on the next business day after deposit in the US mail or tender to such overnight delivery service.

12.    **General Provisions.**  This Agreement shall be governed by the laws of the State of New York without regard to the choice-of-law principles thereof, and with the Exhibits is the entire agreement of the parties related to the subject matter hereof. No amendment or waiver of any provision of this Agreement will be effective unless in a writing signed by the parties. Consultant shall not assign this Agreement without the prior written consent of Company. The illegality or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any legal and enforceable provisions hereof. Any headings used herein are for convenience of reference only and are not a part of this Agreement, nor shall they affect the interpretation hereof. This Agreement may be executed in multiple counterparts, each of which is an original, true and correct version hereof.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the Effective Date.

CALAMAR ENTERPRISES, INC.,
a New York corporation

BY:
Name:
Title:

Address:    Calamar Enterprises, Inc.
3949 Forest Parkway, Suite 100
Wheatfield, NY 14120

BLUE FOREST LAND GROUP, LLC,
a Missouri limited liability company

BY:
Name:   Timothy M. Locher
Title:    President

Address:    Blue Forest Land Group, LLC
P.O. BOX 8703
Prairie Village, KS 66208

**EXHIBIT A: SERVICES**

The *"Services"* include the activities described below for a Desired Facility.

1. Site selection services reflected in a Report.

2. Provide assistance in negotiating an Acquisition Contract in the event Company selects a site from the Report for the location of a Desired Facility.

3. Pursuing Local Governmental Approvals.

4. Target Area – Western Wichita, KS – See Exhibit below for radius



KCP-4487498-3

SUMMONS AND COMPLAINT

EXHIBIT  F

*South Kansas City, MO*

## CONSULTING SERVICES AGREEMENT

THIS CONSULTING SERVICES AGREEMENT (the "*Agreement*") is made as of March 9th, 2016 (the "*Effective Date*") by and between:

**CALAMAR ENTERPRISES, INC.**, a New York corporation ("*Company*"); and.

**BLUE FOREST LAND GROUP, LLC**, a Missouri limited liability company ("*Consultant*").

Company and Consultant agree as follows:

1. **Definitions**. In addition to words and phrases defined elsewhere throughout this Agreement, the following terms shall have the following meanings:

   a. "*Acquisition Contract*" means a definitive purchase contract or ground lease entered into by the Company (or an affiliate of the Company) for a Desired Facility within a Target Area identified in a Notice to Proceed.

   b. "*Cause*" means either (i) Criminal Cause, or (ii) Civil Cause.

   c. "*Civil Cause*" means Consultant's beach of the terms of this Agreement, which continues uncured for thirty (30) days after written notice specifying the nature of such alleged Civil Cause.

   d. "*Criminal Cause*" means that Company had a good faith basis to allege that Consultant has committed fraud, misappropriation of funds, or another felony.

   e. "*Desired Facility*" means any potential development for which Company has issued to Consultant a Notice to Proceed.

   f. "*Local Governmental Approvals*" means all land use and zoning approvals necessary for the construction or operation of the Desired Facility from the local governmental having jurisdiction over the selected location for the Desired Facility.

   g. "*Notice to Proceed*" means written notice sent from Company to Consultant that requests Consultant to commence Services within a Target Area identified therein and identifies other relevant criteria determined by Company for consideration in the performance of the Services (i.e. type of facility, range of square footage, maximum acquisition price, etc.).

   h. "*Report*" means an analysis of potential sites for the Desired Facility within the Target Area and preparation of a ranking of such potential sites, along with recommendations in the discretion of Consultant for altering boundary lines of the Target Area to encompass other potential sites for analysis.

   i. "*Services*" means the consulting services described in **Exhibit A** attached hereto and incorporated herein by reference.

   j. "*Target Area*" means a designated geographic area described either textually (i.e. "within x miles of I-35 and 119th Street, Johnson County, Kansas") or on a map with a delineated search area).

2.   **Services**.  Company hereby engages Consultant as an independent contractor to provide the Services, and Consultant hereby undertakes to provide the Services.  Consultant shall hold the discretion as to the time, place, and manner of performance of the Services; provided however, the manner thereof shall be commercially appropriate in relation to the goals and objectives of the Company.

3.   **Term**.  The initial term of this Agreement shall commence on the Effective Date and expire on the last day of the eighteenth (18th) full calendar month following the Effective Date (the "*Term*").  The Term shall automatically renew for successive one (1) year periods unless and until this Agreement is terminated in accordance with Section 10.

4.   **Compensation and Expenses**.  As compensation to Consultant for providing the Services, Company shall compensate Consultant as follows:

(a)   **Base Fee**.  Company shall pay to Consultant a base fee in the sum of $75,000.00 for each Desired Facility (a "*Base Fee*").  Each Base Fee shall be due and payable, without demand or offset, as follows:

(i)   $22,500.00 with the delivery of a Notice to Proceed.

(ii)   $26,250.00 within fifteen (15) calendar days after full execution of an Acquisition Contract.

(iii) $26,250.00 contemporaneously with the closing of an Acquisition Contract.

(iv) If Company abandons pursuit of a Desired Facility before execution of an Acquisition Contract, no further portion of the Base Fee shall be due and Consultant shall not be obligated to provide any further Services with respect to such Desired Facility unless and until a new Notice to Proceed and new Base Fee are provided for such Desired Facility; except however, if the new Notice to Proceed specifies Company's election to proceed with a particular location that was identified and analyzed in the initial Report for the applicable Target Area, then prior balance of the Base Fee shall apply and be due and payable in accordance with this Section 4(a).

(v) Company and Consultant may, by mutual written agreement entered into prior to the delivery of a Notice to Proceed, establish a different Base Fee and schedule for installment payment thereof with respect to a particular potential Desired Facility, in which event, the provisions of this Agreement (other than subsections 4(a)(i) through 4(a)(iii)) shall nevertheless apply.

(b)   **Reimbursable Expenses and Hourly Fees for Special Services**.  Company shall reimburse Consultant for expenses, disbursements and costs incurred by Consultant in the course of providing the Services to Company, including without limitation cost of travel (not including gas and mileage in the greater Kansas City area), meals, lodging and similar expenses outside of the greater Kansas City area (collectively, "*Reimbursable Expenses*").  Consultant must obtain pre-approval from Company for any Reimbursable Expenses that exceed $500.  All invoices for Reimbursable Expenses must be accompanied by receipts and a signed expense report from Consultant.  Reimbursable Expenses shall not include the costs of Consultant's general office space equipment and facilities.  In addition to the Base Fees and Reimbursable Expenses, Company shall pay Consultant an hourly fee of $175.00 per hour, chargeable in quarter-hour increments, for time expended by Consultant on activities beyond the scope of

the Services ("*Special Services*"), provided that (i) such Special Services are requested by senior management (vice-president or higher) of Company, and (ii) Consultant notifies Company prior to undertaking such Special Services that Consultant deems such activities to be Special Services under this Agreement. An invoice for Reimbursable Expenses and Special Services shall be due and payable to Consultant within thirty (30) days following Company's receipt of such invoice.

(c)    **Extraordinary Services.** The parties agree to negotiate in good faith an increase in a Base Fee for a Desired Facility in the event the parties experience controversial or extraordinary circumstances beyond the standardized process for obtaining Local Governmental Approvals. Any increase in a Base Fee for a Desired Facility shall be documented in a writing signed by both parties.

(d)    **Payment.** All payments owed to Consultant shall be sent to Consultant at its address for notices, or by wire transfer in accordance with wire instructions provided by Consultant.

5.    **Legal Assistance.** Company and Consultant acknowledge that Husch Blackwell LLP ("*Husch*") may be representing Company (and/or its affiliates) as part of the project team for any Desired Facility. Consultant, however, may utilize the services of Husch, as Consultant deems reasonably appropriate, either on behalf of Company (and/or its affiliates) or Consultant, to assist in the pursuit of Local Governmental Approvals; and Consultant shall be responsible for timely paying all fees charged by Husch for the pursuit of such Local Governmental Approvals. In the course of performing Consultant's Services, Consultant may request that Husch provide other services beyond the pursuit of the Local Governmental Approvals (either on behalf of Company (and/or its affiliates) or Consultant, or both), in which event the Company and Consultant will determine at that time which party will be responsible for Husch's fees for such additional scope of services.

6.    **Relationship of the Parties.** This Agreement creates contractual rights only; and Consultant, for all purposes, shall be considered an independent contractor with respect to Company. Consultant acknowledges that no employment relationship exists between Consultant and Company or either party's affiliates, and Consultant shall not be entitled to any salary, insurance coverage, workers compensation coverage, or other benefits from Company. No party shall be considered a partner, agent or legal representative of the other party for any purpose; and Consultant shall have no power or authority, and at no time shall represent or convey the impression that Consultant has any power or authority, to legally bind or commit Company for any purpose. The parties further acknowledge that Consultant is neither expected nor required to devote continuously throughout the Term all of Consultant's time and efforts in providing the Services, and the amount of hours expended by Consultant in performing the Services may vary from week to week and month to month, but at all times Consultant shall devote such time and attention to providing the Services as is reasonably necessary at such time. Subject to Section 12 below, Consultant may enter into agreements with other entities or individuals to perform services on behalf of said other entities or individuals during the Term of this Agreement.

7.    **Conduct.** Consultant undertakes and agrees to (i) comply with all laws, rules, ordinances and regulations of all applicable federal, state and local authorities in providing the Services, (ii) obtain and maintain, at Consultant's cost, all necessary permits and licenses required to provide the Services, and (iii) in recognition of the ethical and moral principles of Company and its affiliates, provide the Services in manner that would not reasonably be viewed as damaging to the reputation of, or inconsistent with the ethical and moral principles of, Company or its affiliates.

8.   **Taxes**.  Consultant shall be responsible for all federal, state and local taxes for all compensation paid hereunder, including without limitation all social security and employment taxes, and Company (unless required by applicable tax authorities) will not withhold taxes or be liable for taxes related to such compensation.

9.   **Confidentiality**.  Consultant covenants and agrees to treat confidentially and not disclose, and not use or exploit for any purpose other than as specified in this Agreement, any information (whether written or oral) which is known to Consultant to be confidential or proprietary information of Company ("***Confidential Information***").  The term Confidential Information as used herein shall be deemed to include, without limitation, technical information, data, know-how, customer lists, catalogs and price lists, computer records, policies, trade secrets, business strategy, financial data, research, development, processes and techniques, and all other confidential and proprietary information of whatever description that may be divulged to Consultant.  Consultant recognizes and acknowledges that (i) the Confidential Information is the property of Company and (ii) damage and irreparable harm could result to Company if such information were used or disclosed (except as authorized expressly in writing by Company), and therefore Consultant consents to injunctive relief and other equitable remedies to prevent such unauthorized use or disclosure.

10.  **Termination**.

   (a)   **Termination by Company**.  Company shall have the right to terminate this Agreement upon expiration of the initial Term or expiration of the then current successive renewal Term by providing written notice to Consultant within the thirty (30) calendar days before expiration of the then current Term.  Company shall have the right to terminate this Agreement at any time for Cause, effective upon written notice to Consultant exercising such right and specifying the basis for the termination for Cause.  If the Company terminates this Agreement for Cause, Consultant shall not be entitled to any further payments under this Agreement, except that if the basis of the termination for Cause is Civil Cause, then Consultant shall be entitled to all Base Fees earned by Consultant, and all Reimbursable Expenses and hourly fees for Special Services incurred by Consultant, prior to the date of the notice of termination.  If Company terminates this Agreement without Cause upon the expiration of the initial or any renewal Term and a Notice to Proceed for any Target Area was issued within the one hundred twenty (120) day period prior to the last day of such initial or renewal Term, Company shall pay Consultant, contemporaneous with the giving of the notice of termination, fifty percent (50%) of all of the Base Fees remaining unpaid at termination, determined as if each Notice to Proceed outstanding on such one hundred twentieth (120th) day had resulted in an Acquisition Contract that closed on the day immediately preceding the date of termination, plus any Reimbursable Expenses and hourly fees for Special Services incurred by Consultant up to the date of the notice of termination.

   (b)   **Termination by Consultant**.  If Company is in default of this Agreement, and such default continues uncured for thirty (30) days after written notice to Company specifying the nature of such default, Consultant shall have the right to terminate this Agreement on written notice to Company.  In the event of such termination by Consultant, Company shall pay Consultant within thirty (30) days after the date of such notice of termination, as damages for such default, the then remainder of the Base Fees not theretofore paid to Consultant prior to such termination, determined as if each Notice to Proceed outstanding on such thirtieth (30th) day had resulted in an Acquisition Contract that closed on the day immediately preceding the date of termination, plus payment for Reimbursable Expenses and hourly fees for Special Services incurred by Consultant through the date of termination.  Notwithstanding anything herein to the contrary, in the event of death of Tim Locher, this Agreement shall automatically

terminate and neither party shall have any further obligations hereunder except Company shall pay Consultant for any amounts earned or invoiced in accordance with this Agreement prior to such death.

(c) **Actions on Termination.** Upon any termination of this Agreement, Consultant shall promptly return to Company all information, materials and documents (including without limitation electronically stored information) in Consultant's possession or control which were prepared by or for Company, or which relate to Company or its business, including without limitation all Confidential Information. The obligations of Consultant pursuant to this Sections 10(c) shall survive the expiration or termination of this Agreement without limitation.

11. **Notices.** All notices required or permitted under this Agreement shall be in writing and may be given by receipted hand delivery, by first class registered mail or by Federal Express or other nationally recognized overnight delivery service, postage or delivery costs prepaid, addressed to the parties at the addresses specified on the last page hereof, or to such other address of which either party may notify the other pursuant to this provision. Notices will be deemed given when received, if delivered by receipted hand delivery, or on the next business day after deposit in the US mail or tender to such overnight delivery service.

12. **General Provisions.** This Agreement shall be governed by the laws of the State of New York without regard to the choice-of-law principles thereof, and with the Exhibits is the entire agreement of the parties related to the subject matter hereof. No amendment or waiver of any provision of this Agreement will be effective unless in a writing signed by the parties. Consultant shall not assign this Agreement without the prior written consent of Company. The illegality or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any legal and enforceable provisions hereof. Any headings used herein are for convenience of reference only and are not a part of this Agreement, nor shall they affect the interpretation hereof. This Agreement may be executed in multiple counterparts, each of which is an original, true and correct version hereof.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the Effective Date.

CALAMAR ENTERPRISES, INC.,
a New York corporation

BY:
Name: Jocelyn Spas
Title: Managing Director

Address:  Calamar Enterprises, Inc.
3949 Forest Parkway, Suite 100
Wheatfield, NY 14120

BLUE FOREST LAND GROUP, LLC,
a Missouri limited liability company

BY:
Name:  Timothy M. Locher
Title:   President

Address:    Blue Forest Land Group, LLC
P.O. BOX 8703
Prairie Village, KS 66208

## EXHIBIT A: SERVICES

The "*Services*" include the activities described below for a Desired Facility.

1. Site selection services reflected in a Report.

2. Provide assistance in negotiating an Acquisition Contract in the event Company selects a site from the Report for the location of a Desired Facility.

3. Pursuing Local Governmental Approvals.

4. Target Area – Southern Kansas City, MO – See Below

Further specified as within three (3) miles of the intersection of 135th and State Line Rd.



KCP-4487498-3

# SUMMONS AND COMPLAINT

# EXHIBIT  G

*Shawnee, KS*

## CONSULTING SERVICES AGREEMENT

THIS CONSULTING SERVICES AGREEMENT (the "*Agreement*") is made as of April 5th, 2016 (the "*Effective Date*") by and between:

**CALAMAR ENTERPRISES, INC.**, a New York corporation ("*Company*"); and

**BLUE FOREST LAND GROUP, LLC**, a Missouri limited liability company ("*Consultant*").

Company and Consultant agree as follows:

i.  **Definitions.** In addition to words and phrases defined elsewhere throughout this Agreement, the following terms shall have the following meanings:

   a.  "*Acquisition Contract*" means a definitive purchase contract or ground lease entered into by the Company (or an affiliate of the Company) for a Desired Facility within a Target Area identified in a Notice to Proceed.

   b.  "*Cause*" means either (i) Criminal Cause, or (ii) Civil Cause.

   c.  "*Civil Cause*" means Consultant's beach of the terms of this Agreement, which continues uncured for thirty (30) days after written notice specifying the nature of such alleged Civil Cause.

   d.  "*Criminal Cause*" means that Company had a good faith basis to allege that Consultant has committed fraud, misappropriation of funds, or another felony.

   e.  "*Desired Facility*" means any potential development for which Company has issued to Consultant a Notice to Proceed.

   f.  "*Local Governmental Approvals*" means all land use and zoning approvals necessary for the construction or operation of the Desired Facility from the local governmental having jurisdiction over the selected location for the Desired Facility.

   g.  "*Notice to Proceed*" means written notice sent from Company to Consultant that requests Consultant to commence Services within a Target Area identified therein and identifies other relevant criteria determined by Company for consideration in the performance of the Services (i.e. type of facility, range of square footage, maximum acquisition price, etc.).

   h.  "*Report*" means an analysis of potential sites for the Desired Facility within the Target Area and preparation of a ranking of such potential sites, along with recommendations in the discretion of Consultant for altering boundary lines of the Target Area to encompass other potential sites for analysis.

   i.  "*Services*" means the consulting services described in **Exhibit A** attached hereto and incorporated herein by reference.

   j.  "*Target Area*" means a designated geographic area described either textually (i.e. "within x miles of I-35 and 119th Street, Johnson County, Kansas") or on a map with a delineated search area).

CONSULTING SERVICES AGREEMENT                                                    *Page 1*

KCP-4487498-3

2.   **Services**.  Company hereby engages Consultant as an independent contractor to provide the Services, and Consultant hereby undertakes to provide the Services.  Consultant shall hold the discretion as to the time, place, and manner of performance of the Services; provided however, the manner thereof shall be commercially appropriate in relation to the goals and objectives of the Company.

3.   **Term**.  The initial term of this Agreement shall commence on the Effective Date and expire on the last day of the eighteenth (18th) full calendar month following the Effective Date (the "**Term**").  The Term shall automatically renew for successive one (1) year periods unless and until this Agreement is terminated in accordance with Section 10.

4.   **Compensation and Expenses**.  As compensation to Consultant for providing the Services, Company shall compensate Consultant as follows:

(a)   Base Fee.  Company shall pay to Consultant a base fee in the sum of $75,000.00 for each Desired Facility (a "*Base Fee*").  Each Base Fee shall be due and payable, without demand or offset, as follows:

(i)   $22,500.00 with the delivery of a Notice to Proceed.

(ii)   $26,250.00 within fifteen (15) calendar days after full execution of an Acquisition Contract.

(iii) $26,250.00 contemporaneously with the closing of an Acquisition Contract.

(iv)   If Company abandons pursuit of a Desired Facility before execution of an Acquisition Contract, no further portion of the Base Fee shall be due and Consultant shall not be obligated to provide any further Services with respect to such Desired Facility unless and until a new Notice to Proceed and new Base Fee are provided for such Desired Facility; except however, if the new Notice to Proceed specifies Company's election to proceed with a particular location that was identified and analyzed in the initial Report for the applicable Target Area, then prior balance of the Base Fee shall apply and be due and payable in accordance with this Section 4(a).

(v)   Company and Consultant may, by mutual written agreement entered into prior to the delivery of a Notice to Proceed, establish a different Base Fee and schedule for installment payment thereof with respect to a particular potential Desired Facility, in which event, the provisions of this Agreement (other than subsections 4(a)(i) through 4(a)(iii)) shall nevertheless apply.

(b)   **Reimbursable Expenses and Hourly Fees for Special Services**.  Company shall reimburse Consultant for expenses, disbursements and costs incurred by Consultant in the course of providing the Services to Company, including without limitation cost of travel (not including gas and mileage in the greater Kansas City area), meals, lodging and similar expenses outside of the greater Kansas City area (collectively, "*Reimbursable Expenses*").  Consultant must obtain pre-approval from Company for any Reimbursable Expenses that exceed $500.  All invoices for Reimbursable Expenses must be accompanied by receipts and a signed expense report from Consultant.  Reimbursable Expenses shall not include the costs of Consultant's general office space equipment and facilities.  In addition to the Base Fees and Reimbursable Expenses, Company shall pay Consultant an hourly fee of $175.00 per hour, chargeable in quarter-hour increments, for time expended by Consultant on activities beyond the scope of

the Services ("*Special Services*"), provided that (i) such Special Services are requested by senior management (vice-president or higher) of Company, and (ii) Consultant notifies Company prior to undertaking such Special Services that Consultant deems such activities to be Special Services under this Agreement. An invoice for Reimbursable Expenses and Special Services shall be due and payable to Consultant within thirty (30) days following Company's receipt of such invoice.

(c) <u>Extraordinary Services</u>. The parties agree to negotiate in good faith an increase in a Base Fee for a Desired Facility in the event the parties experience controversial or extraordinary circumstances beyond the standardized process for obtaining Local Governmental Approvals. Any increase in a Base Fee for a Desired Facility shall be documented in a writing signed by both parties.

(d) <u>Payment</u>. All payments owed to Consultant shall be sent to Consultant at its address for notices, or by wire transfer in accordance with wire instructions provided by Consultant.

5. <u>Legal Assistance</u>. Company and Consultant acknowledge that Husch Blackwell LLP (**"Husch"**) may be representing Company (and/or its affiliates) as part of the project team for any Desired Facility. Consultant, however, may utilize the services of Husch, as Consultant deems reasonably appropriate, either on behalf of Company (and/or its affiliates) or Consultant, to assist in the pursuit of Local Governmental Approvals; and Consultant shall be responsible for timely paying all fees charged by Husch for the pursuit of such Local Governmental Approvals. In the course of performing Consultant's Services, Consultant may request that Husch provide other services beyond the pursuit of the Local Governmental Approvals (either on behalf of Company (and/or its affiliates) or Consultant, or both), in which event the Company and Consultant will determine at that time which party will be responsible for Husch's fees for such additional scope of services.

6. <u>Relationship of the Parties</u>. This Agreement creates contractual rights only; and Consultant, for all purposes, shall be considered an independent contractor with respect to Company. Consultant acknowledges that no employment relationship exists between Consultant and Company or either party's affiliates, and Consultant shall not be entitled to any salary, insurance coverage, workers compensation coverage, or other benefits from Company. No party shall be considered a partner, agent or legal representative of the other party for any purpose, and Consultant shall have no power or authority, and at no time shall represent or convey the impression that Consultant has any power or authority, to legally bind or commit Company for any purpose. The parties further acknowledge that Consultant is neither expected nor required to devote continuously throughout the Term all of Consultant's time and efforts in providing the Services, and the amount of hours expended by Consultant in performing the Services may vary from week to week and month to month, but at all times Consultant shall devote such time and attention to providing the Services as is reasonably necessary at such time. Subject to Section 12 below, Consultant may enter into agreements with other entities or individuals to perform services on behalf of said other entities or individuals during the Term of this Agreement.

7. **Conduct**. Consultant undertakes and agrees to (i) comply with all laws, rules, ordinances and regulations of all applicable federal, state and local authorities in providing the Services, (ii) obtain and maintain, at Consultant's cost, all necessary permits and licenses required to provide the Services, and (iii) in recognition of the ethical and moral principles of Company and its affiliates, provide the Services in manner that would not reasonably be viewed as damaging to the reputation of, or inconsistent with the ethical and moral principles of, Company or its affiliates.

8.  **Taxes.** Consultant shall be responsible for all federal, state and local taxes for all compensation paid hereunder, including without limitation all social security and employment taxes, and Company (unless required by applicable tax authorities) will not withhold taxes or be liable for taxes related to such compensation.

9.  **Confidentiality.** Consultant covenants and agrees to treat confidentially and not disclose, and not use or exploit for any purpose other than as specified in this Agreement, any information (whether written or oral) which is known to Consultant to be confidential or proprietary information of Company ("*Confidential Information*"). The term Confidential Information as used herein shall be deemed to include, without limitation, technical information, data, know-how, customer lists, catalogs and price lists, computer records, policies, trade secrets, business strategy, financial data, research, development, processes and techniques, and all other confidential and proprietary information of whatever description that may be divulged to Consultant. Consultant recognizes and acknowledges that (i) the Confidential Information is the property of Company and (ii) damage and irreparable harm could result to Company if such information were used or disclosed (except as authorized expressly in writing by Company), and therefore Consultant consents to injunctive relief and other equitable remedies to prevent such unauthorized use or disclosure.

10. **Termination.**

    (a) **Termination by Company.** Company shall have the right to terminate this Agreement upon expiration of the initial Term or expiration of the then current successive renewal Term by providing written notice to Consultant within the thirty (30) calendar days before expiration of the then current Term. Company shall have the right to terminate this Agreement at any time for Cause, effective upon written notice to Consultant exercising such right and specifying the basis for the termination for Cause. If the Company terminates this Agreement for Cause, Consultant shall not be entitled to any further payments under this Agreement, except that if the basis of the termination for Cause is Civil Cause, then Consultant shall be entitled to all Base Fees earned by Consultant, and all Reimbursable Expenses and hourly fees for Special Services incurred by Consultant, prior to the date of the notice of termination. If Company terminates this Agreement without Cause upon the expiration of the initial or any renewal Term and a Notice to Proceed for any Target Area was issued within the one hundred twenty (120) day period prior to the last day of such initial or renewal Term, Company shall pay Consultant, contemporaneous with the giving of the notice of termination, fifty percent (50%) of all of the Base Fees remaining unpaid at termination, determined as if each Notice to Proceed outstanding on such one hundred twentieth (120th) day had resulted in an Acquisition Contract that closed on the day immediately preceding the date of termination, plus any Reimbursable Expenses and hourly fees for Special Services incurred by Consultant up to the date of the notice of termination.

    (b) **Termination by Consultant.** If Company is in default of this Agreement, and such default continues uncured for thirty (30) days after written notice to Company specifying the nature of such default, Consultant shall have the right to terminate this Agreement on written notice to Company. In the event of such termination by Consultant, Company shall pay Consultant within thirty (30) days after the date of such notice of termination, as damages for such default, then remainder of the Base Fees not theretofore paid to Consultant prior to such termination, determined as if each Notice to Proceed outstanding on such thirtieth (30th) day had resulted in an Acquisition Contract that closed on the day immediately preceding the date of termination, plus payment for Reimbursable Expenses and hourly fees for Special Services incurred by Consultant through the date of termination. Notwithstanding anything herein to the contrary, in the event of death of Tim Locher, this Agreement shall automatically

terminate and neither party shall have any further obligations hereunder except Company shall pay Consultant for any amounts earned or invoiced in accordance with this Agreement prior to such death.

(c) **Actions on Termination.** Upon any termination of this Agreement, Consultant shall promptly return to Company all information, materials and documents (including without limitation electronically stored information) in Consultant's possession or control which were prepared by or for Company or which relate to Company or its business, including without limitation all Confidential Information. The obligations of Consultant pursuant to this Sections 10(c) shall survive the expiration or termination of this Agreement without limitation.

11. **Notices.** All notices required or permitted under this Agreement shall be in writing and may be given by receipted hand delivery, by first class registered mail or by Federal Express or other nationally recognized overnight delivery service, postage or delivery costs prepaid, addressed to the parties at the addresses specified on the last page hereof, or to such other address of which either party may notify the other pursuant to this provision. Notices will be deemed given when received, if delivered by receipted hand delivery, or on the next business day after deposit in the US mail or tender to such overnight delivery service.

12. **General Provisions.** This Agreement shall be governed by the laws of the State of New York without regard to the choice-of-law principles thereof, and with the Exhibits is the entire agreement of the parties related to the subject matter hereof. No amendment or waiver of any provision of this Agreement will be effective unless in a writing signed by the parties. Consultant shall not assign this Agreement without the prior written consent of Company. The illegality or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any legal and enforceable provisions hereof. Any headings used herein are for convenience of reference only and are not a part of this Agreement, nor shall they affect the interpretation hereof. This Agreement may be executed in multiple counterparts, each of which is an original, true and correct version hereof.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the Effective Date.

CALAMAR ENTERPRISES, INC.,                    BLUE FOREST LAND GROUP, LLC,
a New York corporation:                       a Missouri limited liability company:

BY:                                           BY:
Name:                                         Name:   Timothy M. Locher
Title:                                        Title:     President

Address:    Calamar Enterprises, Inc          Address:    Blue Forest Land Group, LLC
            3949 Forest Parkway, Suite 100                 P.O. BOX 8703
            Wheatfield, NY 14120                           Prairie Village, KS 66208

## EXHIBIT A: SERVICES

The "*Services*" include the activities described below for a Desired Facility.

1. Site selection services reflected in a Report.

2. Provide assistance in negotiating an Acquisition Contract in the event Company selects a site from the Report for the location of a Desired Facility.

3. Pursuing Local Governmental Approvals.

4. Target Area – Shawnee, KS – See Below

Further specified as within three (3) miles of the intersection of Shawnee Mission Parkway and Hwy K7.

