UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CALAMAR ENTERPRISES, INC.,

               Plaintiff,

        v.

BLUE FOREST LAND GROUP, LLC,

              Defendant.
_____

Civil Action No.:
1:16-cv-00686

## DEFENDANT BLUE FOREST LAND GROUP, LLC'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND COUNTERCLAIM

COMES NOW Defendant Blue Forest Land Group, LLC ("Blue Forest"), by and through undersigned counsel, and hereby files its Answer to Plaintiff's Second Amended Complaint (the "Complaint"), and resubmits its August 20, 2016 Counterclaim against Counterclaim Defendant Calamar Enterprises, Inc. ("Calamar").

## ANSWER

1.     Blue Forest admits that its dispute with Calamar arises out of Calamar's breach of various consultant service agreements between Blue Forest and Calamar. Blue Forest denies the extent and remainder of Paragraph 1 of the Complaint.

2.     Paragraph 2 of Plaintiff's Complaint is a statement to which no response is required. To the extent a response is required, Blue Forest denies the allegations in Paragraph 2 of the Complaint.

3.      Blue Forest admits that it and Calamar entered into various consultant service agreements from 2012 to the present.  Blue Forest denies the extent and remainder of Paragraph 3 of the Complaint.

4.      Blue Forest denies the allegations in Paragraph 4 of the Complaint.

<u>THE PARTIES</u>

5.      Blue Forest admits the allegations of Paragraph 5 of the Complaint.

6.      Blue Forest admits that it is a Kansas limited liability company in good standing, and that it provides real estate consulting services.  Blue Forest denies the extent and remainder of Paragraph 6 of the Complaint.

<u>JURISDICTION AND VENUE</u>

7.      Blue Forest admits the allegations in Paragraph 7 of the Complaint.

8.      Blue Forest admits the allegations in Paragraph 8 of the Complaint.

<u>FACTS</u>

9.      Blue Forest is without sufficient information to either admit or deny the allegations in Paragraph 9 of the Complaint.

10.      Blue Forest is without sufficient information to either admit or deny the allegations in Paragraph 10 of the Complaint.

11.      Blue Forest is without sufficient information to either admit or deny the allegations in Paragraph 11 of the Complaint.

12.      Blue Forest is without sufficient information to either admit or deny the allegations in Paragraph 12 of the Complaint.

13.      Blue Forest is without sufficient information to either admit or deny the allegations in Paragraph 13 of the Complaint.

14.     Blue Forest denies the allegations in Paragraph 14 of the Complaint.

15.     Blue Forest denies the allegations in Paragraph 15 of the Complaint.

16.     Blue Forest denies the allegations in Paragraph 16 of the Complaint.

17.     Blue Forest denies the allegations in Paragraph 17 of the Complaint.

18.     Blue Forest admits that it and Calamar entered into various consultant service agreements from 2012 to the present.   Blue Forest denies the extent and remainder of Paragraph 18 of the Complaint.

19.     Blue Forest denies the allegations in Paragraph 19 of the Complaint.

20.     Blue Forest denies the allegations in Paragraph 20 of the Complaint.

21.     Blue Forest admits that it and Calamar entered into the Consultant Services Agreements attached to the Complaint as Exhibits A-N.  Blue Forest denies the extent and remainder of Paragraph 21 of the Complaint.

22.     Blue Forest denies the allegations in Paragraph 22 of the Complaint.

23.     Blue Forest is without sufficient information to either admit or deny the allegations in Paragraph 23 of the Complaint.

24.     Blue Forest is without sufficient information to either admit or deny the allegations in Paragraph 24 of the Complaint.

25.     Blue Forest is without sufficient information to either admit or deny the allegations in Paragraph 25 of the Complaint.

26.     Blue Forest denies the allegations in Paragraph 26 of the Complaint.

27.     Blue Forest denies the allegations in Paragraph 27 of the Complaint.

28.     Blue Forest is without sufficient information to either admit or deny the allegations in Paragraph 28 of the Complaint.

29.    Blue Forest denies the allegations in Paragraph 29 of the Complaint.

30.    Blue Forest denies the allegations in Paragraph 30 of the Complaint.

31.    Blue Forest denies the allegations in Paragraph 31 of the Complaint.

32.    Blue Forest denies the allegations in Paragraph 32 of the Complaint.

33.    Blue Forest denies the allegations in Paragraph 33 of the Complaint.

34.    Blue Forest denies the allegations in Paragraph 34 of the Complaint.

35.    Blue Forest denies the allegations in Paragraph 35 of the Complaint.

36.    Blue Forest admits that the issuance each Notice to Proceed entitled Blue Forest to immediate payment from Calamar.  For its further answer, Blue Forest incorporates the allegations raised in its previously filed Counterclaim against Calamar.  Blue Forest denies the extent and remainder of Paragraph 36 of the Complaint.

37.    Blue Forest denies the allegations in Paragraph 37 of the Complaint.

38.    Blue Forest denies the allegations in Paragraph 38 of the Complaint.

39.    Blue Forest denies the allegations in Paragraph 39 of the Complaint.

40.    Blue Forest denies the allegations in Paragraph 40 of the Complaint.

41.    Blue Forest denies the allegations in Paragraph 41 of the Complaint.

42.    Blue Forest denies the allegations in Paragraph 42 of the Complaint.

43.    Blue Forest denies the allegations in Paragraph 43 of the Complaint.

44.    Blue Forest denies the allegations in Paragraph 44 of the Complaint.

45.    Blue Forest denies the allegations in Paragraph 45 of the Complaint.

46.    Blue Forest denies the allegations in Paragraph 46 of the Complaint.

47.    Blue Forest is without sufficient information to either admit or deny the allegations of Paragraph 47 of the Complaint.

48.     Blue Forest is without sufficient information to either admit or deny the allegations of Paragraph 48 of the Complaint

49.     Blue Forest is without sufficient information to either admit or deny the allegations of Paragraph 49 of the Complaint

50.     Blue Forest is without sufficient information to either admit or deny the allegations of Paragraph 50 of the Complaint

51.     Blue Forest is without sufficient information to either admit or deny the allegations of Paragraph 51 of the Complaint

52.     Blue Forest denies the allegations in Paragraph 52 of the Complaint.

53.     Blue Forest denies the allegations in Paragraph 53 of the Complaint.

54.     Blue Forest denies the allegations in Paragraph 54 of the Complaint.

55.     Blue Forest denies the allegations in Paragraph 55 of the Complaint.

56.     Blue Forest denies the allegations in Paragraph 56 of the Complaint.

57.     Blue Forest denies the allegations in Paragraph 57 of the Complaint.

58.     Blue Forest denies the allegations in Paragraph 58 of the Complaint.

59.     Blue Forest denies the allegations in Paragraph 59 of the Complaint.

60.     Blue Forest admits that Calamar issued a Notice to Proceed with respect to the Waukee, Iowa site.   Blue Forest denies the extent and remainder of Paragraph 60 of the Complaint.

61.     Blue Forest denies the allegations in Paragraph 61 of the Complaint.

62.     Blue Forest denies the allegations in Paragraph 62 of the Complaint.

63.     Blue Forest denies the allegations in Paragraph 63 of the Complaint.

64.     Blue Forest denies the allegations in Paragraph 64 of the Complaint.

65.     Blue Forest denies the allegations in Paragraph 65 of the Complaint.

66.     Blue Forest denies the allegations in Paragraph 66 of the Complaint.

67.     Blue Forest denies the allegations in Paragraph 67 of the Complaint.

68.     Blue Forest admits that Calamar issued a Notice to Proceed with respect to the Andover, Kansas site.  Blue Forest denies the extent and remainder of Paragraph 68 of the Complaint.

69.     Blue Forest denies the allegations in Paragraph 69 of the Complaint.

70.     Blue Forest denies the allegations in Paragraph 70 of the Complaint.

71.     Blue Forest denies the allegations in Paragraph 71 of the Complaint.

72.     Blue Forest denies the allegations in Paragraph 72 of the Complaint.

73.     Blue Forest denies the allegations in Paragraph 73 of the Complaint.

74.     Blue Forest denies the allegations in Paragraph 74 of the Complaint.

75.     Blue Forest denies the allegations in Paragraph 75 of the Complaint.

76.     Blue Forest denies the allegations in Paragraph 76 of the Complaint.

77.     Blue Forest denies the allegations in Paragraph 77 of the Complaint.

78.     Blue Forest denies the allegations in Paragraph 78 of the Complaint.

79.     Blue Forest denies the allegations in Paragraph 79 of the Complaint.

80.     Blue Forest denies the allegations in Paragraph 80 of the Complaint.

81.     Blue Forest denies the allegations in Paragraph 81 of the Complaint.

82.     Blue Forest is without sufficient information to either admit or deny the allegations of Paragraph 82 of the Complaint

83.     Blue Forest denies the allegations in Paragraph 83 of the Complaint.

84.    Blue Forest denies the allegations in Paragraph 84 of the Complaint.

85.    Blue Forest denies the allegations in Paragraph 85 of the Complaint.

86.    Blue Forest denies the allegations in Paragraph 86 of the Complaint.

87.    Blue Forest denies the allegations in Paragraph 87 of the Complaint.

88.    Blue Forest denies the allegations in Paragraph 88 of the Complaint.

89.    Blue Forest denies the allegations in Paragraph 89 of the Complaint.

<u>FIRST CAUSE OF ACTION</u>
(Declaratory Judgment Pursuant to Fed. R. Civ. P. 56 & 28 U.S.C. § 2201)

90.    Blue Forest incorporates its responses to the foregoing paragraphs herein as though set forth in full.

91.    Blue Forest admits that it and Calamar entered into various consultant service agreements from 2012 to the present.  Blue Forest denies the extent and remainder of Paragraph 91 of the Complaint.

92.    Blue Forest admits that Calamar owes Blue Forest $361,648.73, plus interest under various consultant service agreements breached by Calamar, and that Blue Forest has made demand for the monies owed by Calamar.  Blue Forest denies the extent and remainder of Paragraph 92 of the Complaint.

93.    Blue Forest admits that, despite demand, Calamar has failed to pay what is owes under the parties' consultant service agreements.  Blue Forest denies the extent and remainder of Paragraph 93 of the Complaint.

94.    Blue Forest denies the allegations in Paragraph 94 of the Complaint.

95.    Blue Forest denies the allegations in Paragraph 95 of the Complaint.

<u>SECOND CAUSE OF ACTION</u>
(Declaratory Judgment Pursuant to Fed. R. Civ. P. 56 & 28 U.S.C. § 2201)

96.     Blue Forest incorporates its responses to the foregoing paragraphs herein as though set forth in full.

97.     Blue Forest denies the allegations in Paragraph 97 of the Complaint.

98.     Blue Forest denies the allegations in Paragraph 98 of the Complaint.

99.     In response to Paragraph 99, Blue Forest admits that it is not a licensed real estate broker, and that Calamar was well aware of this fact at all times relevant to this action.

100.    Blue Forest denies the allegations in Paragraph 100 of the Complaint.

101.    Blue Forest denies the allegations in Paragraph 101 of the Complaint.

102.    Blue Forest denies the allegations in Paragraph 102 of the Complaint.

103.    Blue Forest denies the allegations in Paragraph 103 of the Complaint.

THIRD CAUSE OF ACTION
(Breach of Contract)

104.    Blue Forest incorporates its responses to the foregoing paragraphs herein as though set forth in full.

105.    Blue Forest denies the allegations in Paragraph 105 of the Complaint.

106.    Blue Forest denies the allegations in Paragraph 106 of the Complaint.

WHEREFORE, having responded in full to the allegations in the Complaint, Blue Forest respectfully requests that the Court dismiss Plaintiff's claims with prejudice, such claims having no basis in fact or law, award Blue Forest its costs and expenses incurred in defending against Plaintiff's claims, and grant Blue Forest all such other relief to which the Court deems it justly entitled.

## AFFIRMATIVE DEFENSES

Having answered the allegations of Plaintiff's Second Amended Complaint, Blue Forest asserts the following affirmative defenses and further response to the Complaint:

1.    Plaintiff's Complaint fails, in whole or in part, to state a claim for which relief may be granted.

2.    Plaintiff's claims for declaratory judgment and claims sounding in equity fail because Plaintiff has an adequate remedy at law.

3.    Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

4.    Plaintiff's claims are barred, in whole or in part, by the doctrine of release.

5.    Plaintiff's claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

6.    Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

7.    Plaintiff's claims are barred, in whole or in part, by Plaintiff's prior material breaches of contract and/or Plaintiff's breach of its duty of good faith and fair dealing.

8.    Plaintiff's claims are barred by Plaintiff's failure to plead and/or satisfy conditions precedent.

9.    Plaintiff's claims are barred, in whole or in part, for failure to mitigate damages.

10.    Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

11.    To the extent that Plaintiff has been damaged, which Blue Forest specifically denies, such damage is attributable to the conduct of Plaintiff.

12.    Blue Forest reserves the right to assert additional affirmative defenses that may come to light through further discovery or further investigation of this matter.

WHEREFORE, having answered the allegations of the Complaint and having asserted additional affirmative defenses, Blue Forest respectfully requests that the Court dismiss Plaintiff's claims with prejudice, such claims having no basis in fact or law, award Blue Forest its costs and expenses incurred in defending against Plaintiff's claims, and grant Blue Forest all such other relief to which the Court deems it justly entitled.

## COUNTERCLAIM

COMES NOW Counterclaim Plaintiff Blue Forest Land Group, LLC ("Blue Forest"), by and through counsel, and, in support of its cause of action against Counterclaim Defendant Calamar Enterprises, Inc. ("Calamar"), states and alleges as follows:

### Introduction

1.    This is a breach of contract action stemming from Calamar's unwillingness and/or financial inability to pay its debts.  This action – filed by Calamar immediately upon receipt of a demand letter from Blue Forest – is before this Court because Calamar is attempting to use the legal system to coerce Blue Forest into accepting far less than it is owed by Calamar under the parties' agreements.

2.    Calamar's liability and improper use of the legal system is evidenced by the fact that representatives of Calamar have admitted that Blue Forest is owed every cent that it has billed Calamar, and that the only reasons Calamar's President, Kenneth Franasiak, has ordered these representatives not to pay Blue Forest is because of cash-flow issues and

Franasiak's after-the-fact disagreement with the bargained-for terms of the parties' agreements.

3.      Shortly before Calamar raced to the courthouse to file this action, two telling events occurred:  Calamar offered to pay Blue Forest all of the amounts due if Blue Forest would agree to retroactively change certain payment terms under the parties' agreements; and Franasiak offered Blue Forest's principal, Tim Locher, a job with Calamar.

<u>Parties</u>

4.      Blue Forest is a Kansas limited liability company in good standing, with its principal place of business located in Prairie Village, Kansas.

5.      Calamar is New York corporation with its principal place of business located in Wheatfield, NY 14120.

6.      Calamar is a sophisticated real estate company that purchases real property and provides construction, development, property management, and finance and investment services for commercial and large-scale residential properties in the Northeast and Midwest regions of the United States, and Southern Ontario, Canada.

<u>Jurisdiction and Venue</u>

7.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

8.      This Court has personal jurisdiction over Counterclaim Defendant.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

<u>Factual Background</u>

**A.      Calamar's Development of Assisted Living Facilities**

10.     Calamar is in the business of constructing three different models of assisted living facilities -- Classic, Hybrid, or Enhanced -- in various target markets across the United States and in Canada.  Classic is the base model.  Enhanced is the nicer, higher-rent model. Hybrid is something in between.

11.     Calamar uses a consultant, GAR Associates, Inc., to determine if a particular target area selected by Calamar will support one or more of its assisted-living-facility models.

12.     Through GAR's and Calamar's analysis of  a "HISTA 2.2 Summary Data Report" and/or a "Phase 1B Report" prepared by GAR, Calamar determines whether the selected target area will support one or more of its assisted-living-facility models.

13.     Calamar then contracts with other consultants such Blue Forest to assist it in locating real property for sale within the approved target market, and then to assist with local government approvals and other location-specific issues.

**B.     Consulting Service Agreements between Calamar and Blue Forest**

14.     From 2012 to the present, Calamar and Blue Forest entered into 15 consulting service agreements whereby Blue Forest was to assist Calamar in locating potential construction sites for Calamar's construction of assisted living facilities.

15.     While Calamar purchases property and constructs assisted living facilities in Canada and across the United States, Blue Forest was tasked with helping Calamar find potential sites in the Midwest within target areas selected and defined by Calamar.

16.     Pursuant to 13 of the 15 consulting service agreements, Calamar agreed to pay Blue Forest a "Base Fee" of $75,000, payable in three payments or "tiers" when certain events occurred.  The first payment of $22,500 was immediately due and payable upon

Calamar's request that Blue Forest commence the process of identifying potential sites in a specific target market.   The second payment of $26,250 was due and payable within 15 calendar days after full execution of an Acquisition Contract.   The third payment of $26,250 was due and payable contemporaneously with the closing of any Acquisition Contract.

17.     In the other two consulting service agreements, Calamar agreed to pay Blue Forest for similar services at an hourly rate of $150 per hour.

18.     While the consulting service agreements provide that Calamar's "Notice to Proceed" is to be in writing, Calamar elected to provide such notice to Blue Forest orally in each and every agreement.

19.     During the parties' relationship, Calamar has paid numerous "tier one" payments after providing Blue Forest with an oral Notice to Proceed.

20.     The consulting service agreements contemplate that Blue Forest may be asked to perform Special Services, which are defined as services beyond the scope of the basic "Services" called for the by contracts, and that Calamar would pay Blue Forest an agreed-upon hourly rate for such services.

21.     All of the consulting service agreements contemplated that Blue Forest would incur certain expenses related to its efforts, and that Calamar was obligated to reimburse such expenses.

22.     Prior to its refusal to pay two Blue Forest invoices submitted in February and May 2016, Calamar had paid all of amounts due under the contracts, including all Reimbursable Expenses and Special Services.

23.     At no point until this action was filed on July 21, 2016, did anyone at Calamar inform Blue Forest that Blue Forest had allegedly breached any portion of any consulting services agreement.

**C.    Calamar Elects Not to Pay Blue Forest**

24.     On February 3, 2016, Blue Forest sent Calamar an invoice in the amount of $120,500.00, seeking payment of past-due base fees on five consulting services agreements. A true and correct copy of the February 3, 2016 Invoice ("Invoice No. 2316") is attached hereto as **Exhibit 1**.

25.     On May 23, 2016, Blue Forest sent Calamar an invoice in the amount of $144,823.73, seeking payment of (a) past-due base fees on five consulting services agreements and (b) certain Reimbursable Expenses incurred by Blue Forest for Calamar's benefit.  A true and correct copy of the May 23, 2016 Invoice ("Invoice No. 52316") is attached hereto as **Exhibit 2**.

26.     Upon receipt of these invoices, representatives of Calamar, including its officers and senior management, admitted to Blue Forest that Calamar owed all amounts Blue Forest has demanded under the parties' agreements.

27.     However, when these representatives submitted Blue Forest's approved invoices for payment, Calamar's President, Kenneth Franasiak, decided not to pay them, and instead sought to renegotiate the payment terms of the parties' consulting service agreements.

28.     Calamar's representatives informed Blue Forest that the reason the monies due and owing to Blue Forest are not being paid is because Franasiak did not, in retrospect,

like the terms of the agreements and because the invoices reflecting the amounts due to Blue Forest were submitted in close proximity to one another.

29.     In short, Franasiak chose not to pay the monies due to Blue Forest because he claimed to disagree with the bargained-for terms of the agreements entered into by Calamar and because Calamar did not have the financial ability to pay both Invoice No. 2316 and Invoice No. 52316.

30.     On a June 7, 2016 conference call, Calamar's in-house counsel, Terry Burton, and Calamar's Director of Senior Housing, Jocelyn Bios, attempted to convince Blue Forest to renegotiate the terms of the parties' agreements.

31.     Through Burton, Calamar offered to (a) immediately pay Blue Forest the $144,823.73 due under Invoice No. 52316 and (b) pay the $120,500.00 due to Blue Forest under Invoice No. 2316 if Blue Forest would agree to retroactively change the due dates for the various base payments shown on Invoice No. 2316 and for any future base payments earned under the consulting service agreements.

32.     Specifically, Burton, on behalf of Calamar, conditioned Calamar's full payment of Invoice No. 2316 on the following changes to the payment structure under the consulting services agreements:

a. Tier one of the Base Fee would be increased from $22,500 (plus $2,000 in travel reimbursement) to $25,000 (plus $2,000 in travel reimbursement), and would now be earned and paid when the development received successful entitlements, rather than upon Blue Forest's commencement of Services;

b. Tier two of the Base Fee would be increased from $26,250 (plus $2,000 in travel reimbursement) to $35,000 (plus $2,000 in travel reimbursement), but

would now be earned and paid at Calamar's ground-breaking rather than upon the full execution of an Acquisition Contract; and

c. Tier three of the Base Fee would be reduced from $26,250 (plus $2,000 in travel reimbursement) to $15,000 (plus $2,000 in travel reimbursement), and would be paid at the issuance of a Certificate of Occupancy rather than upon the closing of the Acquisition Contract.

33. At no point during the June 7, 2016 conference call did Burton claim that Blue Forest had breached any consulting service agreement or that Calamar did not owe all of the amounts shown on Invoice Nos. 2316 and 52316.

34. In a June 10, 2016 e-mail to Locher, Burton attempted to justify Calamar's desire to retroactively change the payment terms of the parties' agreement on the fact that the bargained-for terms of the parties' consulting services agreements put too much of the risk of a failed project on Calamar because the agreements entitled Blue Forest to immediate payment upon its identification of a potential construction sight even though the proposed project might fail for reasons beyond the control of Blue Forest or Calamar:

> The best way that I can explain what Calamar is trying to do is to create a relationship in which Calamar and Blue Forest share the risk and reward of the development projects we pursue. The goal is to structure an understanding in which both parties have a common stake in the outcome of these development projects.
>
> A payment arrangement under which Blue Forest is compensated upon the first identification of a potential site and upon the execution of a Purchase and Sale Agreement essentially shifts to Calamar (at an early stage in the process) all of the risk and costs for projects that fail for reasons beyond the control of either of us. And even after raw land is purchased, there are additional development and construction risks that must be overcome before a project is successful. That's why Calamar has proposed that Blue Forest be compensated at three distinct points in time: (i) when a project receives site plan approval, (ii) when there is a ground-breaking on a site, and (iii) when a certificate of occupancy is issued.

35. Desperate to be paid what it is owed by Calamar, Blue Forest agreed to the renegotiated terms Calamar proposed.

36. Blue Forest subsequently learned that Franasiak refused to honor the modified payment terms proposed by Calamar's in-house counsel and Director of Senior Housing.

37. On June 24, 2016, Locher met with Franasiak in a further attempt to see that Blue Forest was paid what it was owed under its agreements with Calamar.

38. At the June 24 meeting, Franasiak discussed restructuring the parties' current and future agreements, and then in a somewhat schizophrenic fashion (a) showed Locher a map and identified where Calamar wanted Blue Forest's assistance in developing in the future, (b) repeatedly complemented the services Blue Forest had provided and was providing to Calamar, and (c) even offered Locher a job working directly for Calamar.

39. However, despite his complimentary opinion of Blue Forest's efforts and despite never alleging that Blue Forest breached any aspect of any agreement, Franasiak, apparently due to continuing cash flow problems, refused to pay Invoice Nos. 2316 and 52316 in full.

40. On July 14, 2016, Blue Forest's legal counsel sent Calamar a letter demanding immediate payment of Invoice Nos. 2316 and 52316.

41. Despite its repeated admissions that Blue Forest has not breached any agreement with Calamar and that Calamar owes all amounts Blue Forest has demanded under the parties' agreements, Calamar, in response to the July 14 demand letter, filed a lawsuit against Blue Forest and Locher, in New York state court, alleging breach of contract and fraudulent inducement, and seeking a declaratory judgment.

42.    On August 19, 2016, Blue Forest's legal counsel sent Calamar a letter that repeated Blue Forest's demand for payment of Invoice Nos. 2316 and 52316, and demanded full and immediate payment of $76,675 in additional past due amounts that Calamar owes Blue Forest under the parties' various agreements.  Attached hereto as **Exhibit 3** is a true and correct copy of the August 19, 2016 letter from Blue Forest's counsel to Calamar submitting Invoices Nos. 2316, 52316, 81816-1, 81816-2, 81816-3, 81816-4, 81816-5, 81816-6 and 81816-7 for immediate payment.

43.    As of the date of this filing, Calamar has failed to pay  Invoices Nos. 2316, 52316, 81816-1, 81816-2, 81816-3, 81816-4, 81816-5, 81816-6, or 81816-7.

44.    Blue Forest has performed all obligations required of it under its various agreements with Calamar, and has satisfied all conditions precedent to bringing its claim in this action.

## COUNT I – BREACH OF KANSAS CITY, KANSAS AGREEMENT

45.    Blue Forest incorporates by reference its allegations set forth in Paragraphs 1 through 44, as if fully set forth and alleged herein.

46.    On June 15, 2016, Calamar and Blue Forest entered into a consulting services agreement in connection with Calamar's goal of locating and developing real property in Kansas City, Kansas (the "KCK Agreement").  A true and correct copy of the KCK Agreement is attached hereto as **Exhibit 4**.

47.    Upon Calamar's oral Notice to Proceed, Blue Forest commenced its Services under the KCK Agreement, and located several potential sites in the target area specified by Calamar, including a site located at N. 126th Street and State Avenue (the "KCK Property").

48.     On August 1, 2015, Calamar's consultant GAR Associates, Inc., analyzed a HISTA 2.2 Summary Data Report and concluded that the target KCK area would support a "Classic" Calamar product.

49.     On October 12, 2015, GAR completed at Phase 1B Report, which again indicated that the demographics of the target KCK area would support a Classic Calamar product.

50.     On or about February 22, 2016, Calamar or one of its affiliated entities entered into an Acquisition Contract for the purchase of the KCK Property (the "KCK Property Acquisition Contract").  A true and correct copy of the KCK Property Acquisition Contract is attached hereto as **Exhibit 5**.

51.     At Calamar's request and for Calamar' benefit, Blue Forest engaged in 21 hours of Special Services, including preparing for and attending an economic incentives meeting, preparing an Economic Incentives Application, and preparing for and attending a meeting with Unified Government and the Economic Development Corporation.

52.     In consideration for its issuance of the oral Notice to Proceed, Calamar paid Blue Forest $22,500.00 in accordance with the KCK Agreement.

53.     Under the KCK Agreement, Blue Forest is entitled to additional payments of $26,250.00, which became due and payable 15 days after the full execution of the Acquisition Contract, and $3,675.00 in Special Services.

54.     Despite demand, Calamar has not paid Blue Forest any of the monies due and owing under the KCK Agreement.

55.     As a result of Calamar's breach of contract, Blue Forest has been damaged in an amount exceeding $29,925.00.

WHEREFORE, Counterclaim Plaintiff Blue Forest Land Group, LLC respectfully prays for judgment in its favor and against Counterclaim Defendant Calamar Enterprises, Inc. in an amount in excess of $29,925.00, plus prejudgment and post-judgment interest as allowed by law and costs incurred herein, and such other and further relief as this Court deems just and proper.

## COUNT II – BREACH OF ALTOONA AGREEMENT

56.    Blue Forest incorporates by reference its allegations set forth in Paragraphs 1 through 55, as if fully set forth and alleged herein.

57.    On December 3, 2015, Calamar and Blue Forest entered into a consulting services agreement in connection with Calamar's goal of locating and developing real property in Altoona, Iowa (the "Altoona Agreement").  A true and correct copy of the Altoona Agreement is attached hereto as **Exhibit 6**.

58.    Upon Calamar's oral Notice to Proceed, Blue Forest commenced its Services under the Altoona Agreement, and located several potential sites in the target area specified by Calamar, including a site located at SW Rutherford Drive and SW 28th Avenue (the "Altoona Property").

59.    On December 30, 2015, Calamar's consultant GAR Associates, Inc., analyzed a HISTA 2.2 Summary Data Report and concluded that the target Altoona area would support a "Classic" Calamar product:  "*Altoona IA – this is a smaller market, thought there are enough people to support a product.  High incomes in the subject tract ($82k), $67.5k average for the market, Classic for sure.*"

20

60.     On March 18, 2016, GAR completed at Phase 1B Report, which again indicated that the demographics of the target Altoona area would support a Classic Calamar product.

61.     In or about April 14, 2016, Calamar or one of its affiliated entities entered into an Acquisition Contract for the purchase of the Altoona Property (the "Altoona Property Acquisition Contract").   A true and correct copy of the Altoona Property Acquisition Contract is attached hereto as **Exhibit 7**.

62.     Under the Altoona Agreement, Blue Forest is entitled to payment of 24,500.00, which was due and payable upon Calamar's issuance of the Notice to Proceed, and payment of $26,250.00, which was due and payable 15 days after the full execution of the Acquisition Contract.

63.     Despite demand, Calamar has not paid Blue Forest any of the monies owed under the Altoona Agreement.

64.     As a result of Calamar's breach of contract, Blue Forest has been damaged in an amount exceeding $50,750.00.

WHEREFORE, Counterclaim Plaintiff Blue Forest Land Group, LLC respectfully prays for judgment in its favor and against Counterclaim Defendant Calamar Enterprises, Inc. in an amount in excess of $50,750.00, plus prejudgment and post-judgment interest as allowed by law and costs incurred herein, and such other and further relief as this Court deems just and proper.

## COUNT III -- BREACH OF WICHITA AGREEMENT

65.     Blue Forest incorporates by reference its allegations set forth in Paragraphs 1 through 64, as if fully set forth and alleged herein.

66.     On December 3, 2015, Calamar and Blue Forest entered into a consulting services agreement in connection with Calamar's goal of locating and developing real property in the western part of Wichita, Kansas (the "Wichita Agreement").  A true and correct copy of the Wichita Agreement is attached hereto as **Exhibit 8**.

67.     Upon Calamar's oral Notice to Proceed, Blue Forest commenced its Services under the Wichita Agreement, and located several potential sites in the target area specified by Calamar, including a site located at W. 21st Street and N. Forestview Street (the "Wichita Property").

68.     On December 30, 2015, Calamar's consultant GAR Associates, Inc. analyzed a HISTA 2.2 Summary Data Report and concluded that the target Wichita area would support a "Hybrid" Calamar product:  *Wichita KS – as far as potential for 'hybrid' site, this looks good so far.  6,409 people, $92k in the subject tract and a lower market average of $75k. Owner 60k+ income ratios are also higher here."*

69.     On or about February 29, 2016, GAR was released by Calamar to complete a Phase 1B Report.  This report has yet to be provided to Blue Forest.

70.     On or about March 25, 2016, Calamar or one of its affiliated entities entered into an Acquisition Contract for the purchase of the Wichita Property (the "Wichita Property Acquisition Contract").  A true and correct copy of the Wichita Property Acquisition Contract is attached hereto as **Exhibit 9**.

71.     On or about March 4, 2016, Calamar's Executive Vice President of Construction, Tom Weeks, visited and approved the Wichita Property.

72.     Under the Wichita Agreement, Blue Forest is entitled to payment of 24,500.00, which was due and payable upon Calamar's issuance of the Notice to Proceed, and payment of $26,250.00, which was due and payable 15 days after the full execution of the Acquisition Contract.

73.     Despite demand, Calamar has not paid Blue Forest any of the monies owed under the Wichita Agreement.

74.     As a result of Calamar's breach of contract, Blue Forest has been damaged in an amount exceeding $50,750.00.

WHEREFORE, Counterclaim Plaintiff Blue Forest Land Group, LLC respectfully prays for judgment in its favor and against Counterclaim Defendant Calamar Enterprises, Inc. in an amount in excess of $50,750.00, plus prejudgment and post-judgment interest as allowed by law and costs incurred herein, and such other and further relief as this Court deems just and proper.

**COUNT IV – BREACH OF THE WAUKEE CONTRACT**

75.     Blue Forest incorporates by reference its allegations set forth in Paragraphs 1 through 74, as if fully set forth and alleged herein.

76.     On February 1, 2015, Calamar and Blue Forest entered into a consulting services agreement in connection with Calamar's goal of locating and developing real property in Waukee, Iowa (the "Waukee Agreement").  A true and correct copy of the Waukee Agreement is attached hereto as **Exhibit 10**.

77.     Upon Calamar's oral Notice to Proceed, Blue Forest commenced its Services under the Waukee Agreement, and located several potential sites in the target area specified

by Calamar, including a site located at the southeast corner of W. Warrior Lane and Douglas Parkway (the "Waukee Property").

78.    On or about February 17, 2015, Calamar's consultant GAR Associates, Inc. analyzed a HISTA 2.2 Summary Data Report, and concluded that the target Waukee area would support a "Classic" or "Classic Plus" Calamar product.

79.    On or about October 12, 2015, GAR completed at Phase 1B Report, which indicated that the demographics of the target Waukee area would support a "Hybrid" Calamar product.

80.    On or about November 13, 2016, Calamar or one of its affiliated entities entered into a Letter of Intent for the purchase of the Waukee Property (the "Waukee Property Letter of Intent").  A true and correct copy of the Waukee Property Letter of Intent is attached hereto as **Exhibit 11**.

81.    Under the Waukee Agreement, Blue Forest is entitled to payment of 24,500.00, which was due and payable upon Calamar's issuance of the Notice to Proceed.

82.    Despite demand, Calamar has not paid Blue Forest any of the monies owed under the Waukee Agreement.

83.    As a result of Calamar's breach of contract, Blue Forest has been damaged in an amount exceeding 24,500.00.

WHEREFORE, Counterclaim Plaintiff Blue Forest Land Group, LLC respectfully prays for judgment in its favor and against Counterclaim Defendant Calamar Enterprises, Inc. in an amount in excess of 24,500.00, plus prejudgment and post-judgment interest as allowed by law and costs incurred herein, and such other and further relief as this Court deems just and proper.

## COUNT V – BREACH OF ANDOVER CONTRACT

84.     Blue Forest incorporates by reference its allegations set forth in Paragraphs 1 through 83, as if fully set forth and alleged herein.

85.     On February 4, 2016, Calamar and Blue Forest entered into a consulting services agreement in connection with Calamar's goal of locating and developing real property in Andover, Kansas (the "Andover Agreement").  A true and correct copy of the Andover Agreement is attached hereto as **Exhibit 12**.

86.     Upon Calamar's oral Notice to Proceed, Blue Forest commenced its Services under the Andover Agreement, and located several potential sites in the target area specified by Calamar, including a site located at N. 159th Street and W. 21st Street (the "Andover Property").

87.     On December 30, 2015, Calamar's consultant GAR Associates, Inc. analyzed a HISTA 2.2 Summary Data Report, and concluded that the target Andover area would support a "Hybrid" Calamar product.

88.     On or about March 4, 2016, Calamar's Executive Vice President of Construction, Tom Weeks, visited and approved the Andover Property.

89.     On April 6, 2016, GAR completed at Phase 1B Report, which indicated that the demographics of the target Andover area would support a "Hybrid" Calamar product.

90.     On April 6, 2016, Calamar or one of its affiliated entities entered into a Letter of Intent for the purchase of the Andover Property (the "Andover Property Letter of Intent").  A true and correct copy of the Andover Property Letter of Intent is attached hereto as **Exhibit 13**.

91.     Under the Andover Agreement, Blue Forest is entitled to payment of 24,500.00, which was due and payable upon Calamar's issuance of the Notice to Proceed.

92.     Despite demand, Calamar has not paid Blue Forest any of the monies owed under the Andover Agreement.

93.     As a result of Calamar's breach of contract, Blue Forest has been damaged in an amount exceeding 24,500.00.

WHEREFORE, Counterclaim Plaintiff Blue Forest Land Group, LLC respectfully prays for judgment in its favor and against Counterclaim Defendant Calamar Enterprises, Inc. in an amount in excess of 24,500.00, plus prejudgment and post-judgment interest as allowed by law and costs incurred herein, and such other and further relief as this Court deems just and proper.

## COUNT VI – BREACH OF LEE'S SUMMIT CONTRACT

94.     Blue Forest incorporates by reference its allegations set forth in Paragraphs 1 through 93, as if fully set forth and alleged herein.

95.     On September 17, 2015, Calamar and Blue Forest entered into a consulting services agreement in connection with Calamar's goal of locating and developing real property in Lee's Summit, Missouri (the "Lee's Summit Agreement").  A true and correct copy of the Lee's Summit Agreement is attached hereto as **Exhibit 14**.

96.     Upon Calamar's oral Notice to Proceed, Blue Forest commenced its Services under the Lee's Summit Agreement, and located several potential sites in the target area specified by Calamar, including a site located at S.W. Arborwalk Boulevard and Arboridge (the "Lee's Summit Property").

97.    On May 7, 2015 GAR Associates, Inc. indicated that a "Classic" product would work, and recommended further analysis for higher-end products.

98.    On November 2, 2015, GAR further analyzed the area and concluded a potential for higher rents and subsequently recommended the further analysis for a "Hybrid" product.

99.    On January 15, 2016, GAR completed at Phase 1B Report, which indicated that the demographics of the target Lee's Summit area would support a Hybrid Calamar product.

100.    On November 13, 2015, Calamar signed a Letter of Intent for the purchase of the Lee's Summit Property (the "Lee's Summit Property Letter of Intent"), but has not yet executed an Acquisition Contract.  A true and correct copy of the Lee's Summit Property Letter of Intent is attached hereto as **Exhibit 15**.

101.    Under the Lee's Summit Agreement, Blue Forest is entitled to payment of 22,500.00, which was due and payable upon Calamar's issuance of the Notice to Proceed.

102.    Despite demand, Calamar has not paid Blue Forest any of the monies owed under the Lee's Summit Agreement.

103.    As a result of Calamar's breach of contract, Blue Forest has been damaged in an amount exceeding 22,500.00.

WHEREFORE, Counterclaim Plaintiff Blue Forest Land Group, LLC respectfully prays for judgment in its favor and against Counterclaim Defendant Calamar Enterprises, Inc. in an amount in excess of 22,500.00, plus prejudgment and post-judgment interest as allowed by law and costs incurred herein, and such other and further relief as this Court deems just and proper.

## COUNT VII – BREACH OF SHAWNEE CONTRACT

104.    Blue Forest incorporates by reference its allegations set forth in Paragraphs 1 through 103, as if fully set forth and alleged herein.

105.    On April 5, 2016, Calamar and Blue Forest entered into a consulting services agreement in connection with Calamar's goal of locating and developing real property in Shawnee, Kansas (the "Shawnee Agreement").  A true and correct copy of the Shawnee Agreement is attached hereto as **Exhibit 16**.

106.    Upon Calamar's oral Notice to Proceed, Blue Forest commenced its Services under the Shawnee Agreement, and located several potential sites in the target area specified by Calamar, including a site located at Silverheel Street and W. 71st Street (the "Shawnee Property").

107.    In or about August 2014, Calamar's consultant GAR Associates, Inc., analyzed a HISTA 2.2 Summary Data Report, and concluded that the target Shawnee area would support a "Classic" Calamar product.

108.    On March 25, 2016, Calamar signed a Letter of Intent for the purchase of the Shawnee Property (the "Shawnee Property Letter of Intent").  A true and correct copy of the Shawnee Property Letter of Intent is attached hereto as **Exhibit 17.**

109.    On June 7, 2016, Calamar's Regional Manager, Tim McQuire, and Calamar's Director of Facilities Services, Marc Guizzo, visited and approved the Shawnee Property.

110.    Under the Shawnee Agreement, Blue Forest is entitled to payment of 22,500.00, which was due and payable upon Calamar's issuance of the Notice to Proceed.

111. Despite demand, Calamar has not paid Blue Forest any of the monies owed under the Shawnee Agreement.

112. As a result of Calamar's breach of contract, Blue Forest has been damaged in an amount exceeding 22,500.00.

WHEREFORE, Counterclaim Plaintiff Blue Forest Land Group, LLC respectfully prays for judgment in its favor and against Counterclaim Defendant Calamar Enterprises, Inc. in an amount in excess of 22,500.00, plus prejudgment and post-judgment interest as allowed by law and costs incurred herein, and such other and further relief as this Court deems just and proper.

## COUNT VIII – BREACH OF SOUTH KANSAS CITY CONTRACT

113. Blue Forest incorporates by reference its allegations set forth in Paragraphs 1 through 112, as if fully set forth and alleged herein.

114. On March 9, 2016, Calamar and Blue Forest entered into a consulting services agreement in connection with Calamar's goal of locating and developing real property in South Kansas City, Missouri (the "South Kansas City Agreement"). A true and correct copy of the South Kansas City Agreement is attached hereto as **Exhibit 18**.

115. Upon Calamar's oral Notice to Proceed, Blue Forest commenced its Services under the South Kansas City Agreement, and located several potential sites in the target area specified by Calamar, including a site located at 135th Street and State Line Road (the "South Kansas City Property").

116. On January 27, 2016, GAR completed at Phase 1B Report, which indicated that the demographics of the target South Kansas City area would support a Hybrid Calamar product: *"This was a contender for the Hybrid concept, but similar to Lee's Summit the*

*rents assume Classic model units/amenities. This market will actually support slightly higher rents than Lee's Summit. Numbers can be reconsidered when new hybrid specs are introduced."*

117.    Under the South Kansas City Agreement, Blue Forest is entitled to payment of 22,500.00, which was due and payable upon Calamar's issuance of the Notice to Proceed.

118.    Despite demand, Calamar has not paid Blue Forest any of the monies owed under the South Kansas City Agreement.

119.    As a result of Calamar's breach of contract, Blue Forest has been damaged in an amount exceeding 22,500.00.

WHEREFORE, Counterclaim Plaintiff Blue Forest Land Group, LLC respectfully prays for judgment in its favor and against Counterclaim Defendant Calamar Enterprises, Inc. in an amount in excess of 22,500.00, plus prejudgment and post-judgment interest as allowed by law and costs incurred herein, and such other and further relief as this Court deems just and proper.

## <u>COUNT IX – BREACH OF BLUE SPRINGS CONTRACT</u>

120.    Blue Forest incorporates by reference its allegations set forth in Paragraphs 1 through 119, as if fully set forth and alleged herein.

121.    On February 1, 2015, Calamar and Blue Forest entered into a consulting services agreement in connection with Calamar's goal of locating and developing real property in Blue Springs, Missouri (the "Blue Springs Agreement").  A true and correct copy of the Blue Springs Agreement is attached hereto as **Exhibit 19**.

122.    Upon Calamar's oral Notice to Proceed, Blue Forest commenced its Services under the Blue Springs Agreement, and located several potential sites in the target area

specified by Calamar, including a site located at Missouri Highway 7 and S.W. Southgate Drive (the "Blue Springs Property").

123.    In or about August 2014, Calamar's consultant GAR Associates, Inc., analyzed a HISTA 2.2 Summary Data Report, and concluded that the target Blue Springs area would support a "Classic" Calamar product.

124.    From February through June of 2015, Blue Forest, under the direction of Calamar, engaged a local civil engineer to perform preliminary site layout and estimates for the proposed site.    After multiple meetings with the City and local school district superintendent (adjacent property owner) the costs associated with road and utility extensions were deemed to make the site unfeasible for further due diligence.    Calamar further instructed Blue Forest to delay its Services in the Blue Springs area until further lease-up of adjacent property in Independence, Missouri.

125.    Under the Blue Springs Agreement, Blue Forest is entitled to payment of 22,500.00, which was due and payable upon Calamar's issuance of the Notice to Proceed.

126.    Despite demand, Calamar has not paid Blue Forest any of the monies owed under the Blue Springs Agreement.

127.    As a result of Calamar's breach of contract, Blue Forest has been damaged in an amount exceeding 22,500.00.

WHEREFORE, Counterclaim Plaintiff Blue Forest Land Group, LLC respectfully prays for judgment in its favor and against Counterclaim Defendant Calamar Enterprises, Inc. in an amount in excess of 22,500.00, plus prejudgment and post-judgment interest as allowed by law and costs incurred herein, and such other and further relief as this Court deems just and proper.

## COUNT X – BREACH OF ANKENY AGREEMENT

128.    Blue Forest incorporates by reference its allegations set forth in Paragraphs 1 through 127, as if fully set forth and alleged herein.

129.    Calamar and Blue Forest entered into a consulting services agreement in connection with Calamar's goal of locating and developing real property in Ankeny, Iowa (the "Ankeny Agreement").  A true and correct copy of the Ankeny Agreement is attached hereto as **Exhibit 20**.  The effective date of the Ankeny Agreement is June 1, 2014, but Calamar did not execute the agreement and return it to Blue Forest until December 10, 2014.

130.    Upon Calamar's oral Notice to Proceed, Blue Forest commenced its Services under the Ankeny Agreement, and located several potential sites in the target area specified by Calamar, including a site located at S.W. 28th Street and S.W. Tradition Drive (the "Ankeny Property").

131.    On or about November 24, 2014, Calamar or one of its affiliated entities entered into an Acquisition Contract for the purchase of the Ankeny Property.

132.    On or about July 30, 2015, Calamar closed on Ankeny Acquisition Contract.

133.    At Calamar's request and for Calamar's benefit, Blue Forest engaged in 28 hours of Special Services, including planning and attending the ground breaking for the facility, coordinating with local organizations and neighborhood groups to promote Calamar and the project, and coordinating and introducing the proposed community.

134.    Blue Forest earned and Calamar paid the entire $75,000.00 Base Fee.

135.    Calamar has not yet paid Blue Forest for the $4,900 in Special Services Blue Forest performed at Calamar's request and for Calamar' benefit.

136.    Under the Ankeny Agreement, Blue Forest is entitled to payment of $4,900.00 in Special Services.

137.    Despite demand, Calamar has not paid Blue Forest the monies owed under the Ankeny Agreement.

138.    As a result of Calamar's breach of contract, Blue Forest has been damaged in an amount exceeding $4,900.00.

WHEREFORE, Counterclaim Plaintiff Blue Forest Land Group, LLC respectfully prays for judgment in its favor and against Counterclaim Defendant Calamar Enterprises, Inc. in an amount in excess of $4,900.00, plus prejudgment and post-judgment interest as allowed by law and costs incurred herein, and such other and further relief as this Court deems just and proper.

## COUNT XI – BREACH OF INDIANOLA AGREEMENT

139.    Blue Forest incorporates by reference its allegations set forth in Paragraphs 1 through 138, as if fully set forth and alleged herein.

140.    Calamar and Blue Forest entered into a consulting services agreement in connection with Calamar's goal of locating and developing real property in Indianola, Iowa (the "Indianola Agreement"). A true and correct copy of the Indianola Agreement is attached hereto as **Exhibit 21**. The effective date of the Indianola Agreement is "March 2014," but Calamar did not execute and return it to Blue Forest until December 10, 2014.

141.    Upon Calamar's oral Notice to Proceed, Blue Forest commenced its Services under the Indianola Agreement, and located several potential sites in the target area specified by Calamar, including a site located at E. Scenic Valley Avenue and N. 6th Street (the "Indianola Property").

142.    On or about January 20, 2015, Calamar or one of its affiliated entities entered into an Acquisition Contract for the purchase of the Indianola Property.

143.    On or about August 12, 2015, Calamar closed on Indianola Acquisition Contract.

144.    At Calamar's request and for Calamar's benefit, Blue Forest engaged in 32 hours of Special Services, including planning and attending the ground breaking for the facility, coordinating and attending focus group, and coordinating with local organizations and neighborhood groups to promote Calamar and the project.

145.    Blue Forest earned and Calamar paid the entire $75,000.00 Base Fee.

146.    Calamar has not yet paid Blue Forest for the $5,600.00 in Special Services Blue Forest performed at Calamar's request and for Calamar' benefit.

147.    Under the Indianola Agreement, Blue Forest is entitled to payment of $5,600.00 in Special Services.

148.    Despite demand, Calamar has not paid Blue Forest the monies owed under the Indianola Agreement.

149.    As a result of Calamar's breach of contract, Blue Forest has been damaged in an amount exceeding $5,600.00.

WHEREFORE, Counterclaim Plaintiff Blue Forest Land Group, LLC respectfully prays for judgment in its favor and against Counterclaim Defendant Calamar Enterprises, Inc. in an amount in excess of $5,600.00, plus prejudgment and post-judgment interest as allowed by law and costs incurred herein, and such other and further relief as this Court deems just and proper.

## COUNT XII – BREACH OF OLATHE AGREEMENT

150.    Blue Forest incorporates by reference its allegations set forth in Paragraphs 1 through 149, as if fully set forth and alleged herein.

151.    Calamar and Blue Forest entered into a consulting services agreement in connection with Calamar's goal of locating and developing real property in Olathe, Kansas (the "Olathe Agreement").  A true and correct copy of the Olathe Agreement is attached hereto as **Exhibit 22**.  The effective date of the Olathe Agreement is "November 2013," but Calamar did not execute it and return it Blue Forest until December 10, 2014.

152.    Upon Calamar's oral Notice to Proceed, Blue Forest commenced its Services under the Olathe Agreement, and located several potential sites in the target area specified by Calamar, including a site located at W. 135th Street and S. Greenwood Street (the "Olathe Property").

153.    On or about September 11, 2014, Calamar or one of its affiliated entities entered into an Acquisition Contract for the purchase of the Olathe Property.

154.    On or about December 23, 2014, Calamar closed on Olathe Acquisition Contract.

155.    At Calamar's request and for Calamar' benefit, Blue Forest engaged in 28 hours of Special Services, including assisting in placement and installation approval of marketing signage for the project, planning and attending the ground breaking for the facility, coordinating and attending focus group, and meeting with city inspectors.

156.    During its performance of the Olathe Contract, Blue Forest, at Calamar's request and for Calamar' benefit, incurred $14,651.00 in Reimbursable Expenses.

157.    Blue Forest earned and Calamar paid the entire $75,000.00 Base Fee.

158.     Calamar has not yet paid Blue Forest for the $4,900.00 in Special Services Blue Forest performed at Calamar's request and for Calamar's benefit, or for the $14,651.00 in Reimbursable Expenses Blue Forest incurred at Calamar's request and for Calamar' benefit.

159.     Under the Olathe Agreement, Blue Forest is entitled to payment of $4,900.00 in Special Services and $14,651.00 in Reimbursable Expenses.

160.     Despite demand, Calamar has not paid Blue Forest the monies owed under the Olathe Agreement.

161.     As a result of Calamar's breach of contract, Blue Forest has been damaged in an amount exceeding $19,551.00.

WHEREFORE, Counterclaim Plaintiff Blue Forest Land Group, LLC respectfully prays for judgment in its favor and against Counterclaim Defendant Calamar Enterprises, Inc. in an amount in excess of $19,551.00, plus prejudgment and post-judgment interest as allowed by law and costs incurred herein, and such other and further relief as this Court deems just and proper.

## COUNT XIII – BREACH OF KCMO AGREEMENT

162.     Blue Forest incorporates by reference its allegations set forth in Paragraphs 1 through 161, as if fully set forth and alleged herein.

163.     In or about May 2013, Calamar and Blue Forest entered into a consulting services agreement in connection with Calamar's goal of locating and developing real property in Kansas City, Missouri, Kansas (the "KCMO Agreement").  A true and correct copy of pages 1 and 3 of the KCMO Agreement are attached hereto as **Exhibit 23**.

164.    Upon Calamar's oral Notice to Proceed, Blue Forest commenced its Services under the KCMO Agreement, and located several potential sites in the target area specified by Calamar, including a site located at N.E. 94th Street and N.W. Viewcrest Drive (the "KCMO Property").

165.    On or about August 27, 2013, Calamar or one of its affiliated entities entered into an Acquisition Contract for the purchase of the KCMO Property.

166.    On or about March 5, 2014, Calamar closed on KCMO Acquisition Contract.

167.    At Calamar's request and for Calamar' benefit, Blue Forest engaged in 162 hours of Special Services.

168.    During its performance of the KCMO Contract, Blue Forest, at Calamar's request and for Calamar' benefit, incurred $2,422.73 in Reimbursable Expenses.

169.    Blue Forest earned and Calamar paid the entire $75,000.00 Base Fee.

170.    Calamar paid Blue Forest $22,650.00 for 59 hours of the Special Services Blue Forest performed at Calamar's request and for Calamar' benefit.

171.    Calamar has not yet paid Blue Forest for the remaining $15,450.00 in Special Services Blue Forest performed at Calamar's request and for Calamar' benefit, or for the $2,422.73 in Reimbursable Expenses Blue Forest incurred at Calamar's request and for Calamar' benefit.

172.    Under the KCMO Agreement, Blue Forest is entitled to payment of $15,450.00 in Special Services and $2,422.73 in Reimbursable Expenses.

173.    Despite demand, Calamar has not paid Blue Forest the monies owed under the KCMO Agreement.

174.    As a result of Calamar's breach of contract, Blue Forest has been damaged in an amount exceeding $17,872.73.

WHEREFORE, Counterclaim Plaintiff Blue Forest Land Group, LLC respectfully prays for judgment in its favor and against Counterclaim Defendant Calamar Enterprises, Inc. in an amount in excess of $17,872.73, plus prejudgment and post-judgment interest as allowed by law and costs incurred herein, and such other and further relief as this Court deems just and proper.

## COUNT XIV – BREACH OF INDEPENDENCE AGREEMENT

175.    Blue Forest incorporates by reference its allegations set forth in Paragraphs 1 through 174, as if fully set forth and alleged herein.

176.    In April 2013, Calamar and Locher LLC entered into a consulting services agreement in connection with Calamar's goal of locating and developing real property in Independence Missouri (the "Independence Agreement").  A true and correct copy of the Independence Agreement is attached hereto as **Exhibit 24**.

177.    Upon Calamar's oral Notice to Proceed, Blue Forest commenced Services under the Independence Agreement, and located several potential sites in the target area specified by Calamar, including a site located at E. 50th Terrace and Little Blue Parkway (the "Independence Property").

178.    On or about October 19, 2012, Independence or one of its affiliated entities entered into an Acquisition Contract for the purchase of the Independence Property.

179.    On or about June 27, 2013, Calamar closed on Independence Acquisition Contract.

180.    At Calamar's request and for Calamar's benefit, Blue Forest engaged in 195 hours of Special Services.

181.    Blue Forest earned and Calamar paid the entire $75,000.00 Base Fee.

182.    On July 21, 2014, Blue Forest sent Calamar an invoice ("July 21, 2014 Invoice") for 64 of the 195 hours of Special Services it performed at Calamar's request and for Calamar' benefit.  A true and correct copy of the July 21, 2014 Invoice is attached hereto as **Exhibit 25**.

183.    Calamar paid Blue Forest the amounts due and owing under the July 21, 2014 Invoice.

184.    Calamar has not yet paid Blue Forest for the remaining $19,650.00 in Special Services Blue Forest performed at Calamar's request and for Calamar' benefit.

185.    Under the Independence Agreement, Blue Forest is entitled to payment of $19,650.00 in Special Services.

186.    Despite demand, Calamar has not paid Blue Forest the monies owed under the Independence Agreement.

187.    As a result of Calamar's breach of contract, Blue Forest has been damaged in an amount exceeding $19,650.00.

WHEREFORE, Counterclaim Plaintiff Blue Forest Land Group, LLC respectfully prays for judgment in its favor and against Counterclaim Defendant Calamar Enterprises, Inc. in an amount in excess of $19,650.00, plus prejudgment and post-judgment interest as allowed by law and costs incurred herein, and such other and further relief as this Court deems just and proper.

Dated:  Buffalo, New York
        February 8, 2017

PHILLIPS LYTLE LLP

By: _____
        Kevin J. English
        Edward S. Bloomberg
        Matthew R. Mazgaj
Attorneys for *Blue Forest Land Group, LLC*
One Canalside
125 Main Street
Buffalo, New York  14203-2887
Telephone No. (716) 847-8400
kenglish@phillipslytle.com
ebloomberg@phillipslytle.com
mmazgaj@phillipslytle.com